IN RE the TERMINATION OF PARENTAL RIGHTS TO
PRESTIN T.B., a Person Under the Age of 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH &
HUMAN SERVICES, Petitioner-Appellant-Petitioner,

v.

JULIE A.B., Respondent-Respondent.

Supreme Court

*No. 01–1692. Oral argument April 9, 2002.—Decided
July 10, 2002.*

2002 WI 95

(Also reported in 648 N.W.2d 402.)

For the petitioner-appellant-petitioner there was a brief and oral argument by *Mary T. Wagner,* assistant district attorney, with whom on the brief was *Robert J. Wells, Jr.,* district attorney.

For the respondent-respondent there was a brief by *Ronald J. Sonderhouse* and *Kay & Kay Law Firm,* Brookfield, and oral argument by *Ronald J. Sonderhouse.*

¶ 1. DAVID T. PROSSER, J. This is a review of

an unpublished single-judge decision of the court of appeals which affirmed an order of the Circuit Court for Sheboygan County, James J. Bolgert, Judge.[1] The issue presented in this appeal is: What standards must the circuit court apply in determining the appropriate disposition of a petition for termination of parental rights, after the court or a jury has found that statutory grounds for termination exist?

¶ 2. In this case, a jury found that a child placed in foster care because of parental neglect had a continuing need of protection or services. This finding was made at a fact-finding hearing under Wis. Stat. § 48.424 (1999–2000).[2] A "continuing need of protection or services" is one of the 11 grounds for termination of parental rights listed in § 48.415. The circuit court then found the parent unfit, pursuant to § 48.424(4), after concluding that the evidence supported the verdict. However, at the dispositional hearing, the court determined that the conduct of the parent was not sufficiently egregious to warrant termination of parental rights and that termination was not essential to the child's safety or welfare. It therefore dismissed the termination petition without ever considering the best interests of the child.

¶ 3. On appeal, the court of appeals affirmed, concluding that the standards applied by the circuit court were correct, based on language in *B.L.J. v. Polk County Department of Social Services,* 163 Wis. 2d 90, 103, 470 N.W.2d 914 (1991), and *State v. Kelly S.,* 2001 WI App 193, 247 Wis. 2d 144, 634 N.W.2d 120, a case

---

[1] *Sheboygan County DHHS v. Julie A.B.,* No. 01–1692, unpublished slip op. (Wis. Ct. App. Sept. 5, 2001).

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 statutes unless otherwise indicated.

decided by the court of appeals earlier in the year. *Sheboygan County DHHS v. Julie A.B.*, No. 01-1692, unpublished slip op. at ¶¶ 1, 11-13 (Wis. Ct. App. Sept. 5, 2001).

¶ 4. We conclude that the standards applied by the circuit court and court of appeals were not correct because a portion of our *B.L.J.* opinion was not correct. The statutes governing petitions for termination of parental rights require the court, in the exercise of its discretion, to consider the best interests of the child as the prevailing factor in a disposition under Wis. Stat. § 48.427. After a jury or the court has found one of the grounds for termination listed in the statute and the court has found the parent unfit, the focus shifts to the child's best interests. At the dispositional hearing, the court must consider any agency report submitted and the six factors enumerated in § 48.426(3) in determining the best interests of the child. The court may also consider other factors, including factors favorable to the parent; but all factors relied upon must be calibrated to the prevailing standard: the best interests of the child. The best interests of the child is the polestar for the court in a dispositional hearing, and a failure to apply that standard is an error of law.

¶ 5. Because the circuit court understandably applied incorrect legal standards, it erroneously exercised its discretion. Accordingly, we reverse the decision of the court of appeals and remand the case to the circuit court. Because the disposition standards set forth in *B.L.J.* and *Kelly S.* are inconsistent with this opinion, we modify *B.L.J.* and overrule *Kelly S.*

## FACTS

¶ 6. This case involves a petition for termination of the parental rights of Julie A.B. (Julie) and James T.

(James) to Prestin T.B. (Prestin), who was born April 11, 1998. The Sheboygan County Department of Health and Human Services (Department) initiated a petition for termination of parental rights (petition) on December 4, 2000, alleging that Julie and James were unfit parents and positing two grounds for termination: "abandonment" and "continuing need of protection or services."[3]

¶ 7. The Department had received previous referrals about Julie's parenting of Prestin. On November 12, 1998, when Prestin was seven months old, the Department received a referral alleging neglect. It was not substantiated. On October 12, 1999, when Prestin was 18 months old, the Department received a second referral. It alleged that Julie was homeless, drank alcohol on a daily basis, moved from house to house to find shelter, and would often leave Prestin with people who were "drunk, high, or on cocaine." The Department investigated but was unable to locate Julie or Prestin.

¶ 8. On January 20, 2000, the Department received a third referral, also alleging that Julie was neglecting Prestin. The third referral alleged that Julie continued to have problems with alcohol and that her lodgings were "filthy."

¶ 9. A Department social worker contacted Julie the next day at the apartment where she and Prestin were staying. The social worker found that the apartment contained no milk, virtually no edible food, no crib or child bedding, and little clothing suitable for a child. She noted old, inedible food in the refrigerator and on the stove, and that the apartment had dirty dishes, beer cans, and cigarette butts throughout, along with "dirty

---

[3] James T. had moved out of state and effectively abandoned Prestin. He was never engaged as a parent.

clothes, tools, dirt, and miscellaneous clutter which presented a safety hazard for a [21]-month-old child." The social worker observed Prestin pick up a nail and try to place it in his mouth, and also try to eat food items found on the floor. The social worker deemed the apartment "unsuitable to meet the needs of Prestin."

¶ 10. The Department's court report stated that Julie admitted to having a problem with alcohol and to drinking alcohol on "almost a daily basis." She denied having a drug problem but admitted using cocaine once in the previous six months. Julie allegedly stated that she and Prestin had lived in the apartment "off and on for several months" and that two males who were severe alcoholics and drank on a daily basis also resided there. Prestin was taken into custody that day and placed in foster care.[4]

¶ 11. After a child in need of protection or services (CHIPS) petition was filed, Julie failed to appear at the hearing. On April 14, 2000, Sheboygan County Circuit Judge John B. Murphy determined that Prestin was in need of protective services pursuant to Wis. Stat. § 48.13(10), thereby finding that he was a child whose parent neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child. Judge Murphy ordered Prestin placed in a foster home under supervision of the Department for one year. The dispositional order also placed a number of conditions upon Julie. She was ordered to undergo an alcohol and other drug assessment (AODA), submit to a psychological evaluation and follow through with treatment, participate in a regularly scheduled visitation program, make

_____

[4] Julie waived a placement hearing, in writing.

reasonable efforts to obtain employment, and establish and maintain a residence suitable to Prestin's needs. Additionally, Julie and James were directed to meet with and cooperate with Prestin's social worker.

¶ 12. Julie did not meet most of these conditions, and James satisfied none. Hence, on December 4, 2000, the Department initiated termination of parental rights proceedings against them on grounds of abandonment and continuing need of protection or services. Prestin's social worker attached to the petition a statement explaining that the Department had attempted to help Julie and James comply with the April 14, 2000 dispositional order, but that James had not met with or cooperated with Prestin's social worker and Julie had not followed through with her AODA outpatient program, had not submitted to a psychological evaluation, had missed numerous appointments with the social worker and visits with Prestin, and had been unable to maintain employment or a suitable residence. The social worker attributed some of Julie's failure to comply with the order to her being in jail, absconding from jail, and being "on the run from jail."[5]

---

[5] Julie acknowledged at trial that she had been convicted of "Operating under influence of intoxicant or other drug," fourth offense, and was to report to jail on March 20, 2000, to serve a 180–day sentence. Julie failed to do so, and was subsequently picked up by police on April 21. She had work release privileges, but on May 27, she failed to report back to jail. When she was picked up by police on June 13, she "was intoxicated" and "had a fight with the police."

Julie pled no contest to four felonies that she committed between March 20, 2000, and September 16, 2000. She was convicted of "Failure to report to jail," contrary to Wis. Stat. § 946.425(1m)(b); "Battery to a Law Enforcement Officer," con-

179

¶ 13. On March 6, 2001, Judge Bolgert conducted a fact-finding jury trial to determine whether a statutory ground existed for terminating the parental rights of Julie and James. The ground ultimately alleged by the Department was that Prestin had a "continuing need of protection or services." *See* Wis. Stat. § 48.415(2). To determine that Prestin had a continuing need of protection or services, the jury had to find that the state had proven each of four elements by clear and convincing evidence. The questions for the jury were:

> (1) Has [Prestin] been adjudged to be in need of protection or services and placed outside the home for a cumulative total of six months or longer pursuant to one or more court orders containing the termination of parental rights notice required by law?
>
> (2) Did the Sheboygan County Department of Health and Human Services make a reasonable effort to provide the services ordered by the court?
>
> (3) Has [Julie] failed to meet the conditions established for the safe return of [Prestin] to [Julie's] home?
>
> (4) Is there a substantial likelihood that [Julie] will not meet those conditions within the twelve-month period following the conclusion of this hearing?

¶ 14. The court answered the first question for the jury, stating that Prestin had been placed outside the home for six months or more. In fact, he had lived with the same foster family for 14 months. The jury unanimously answered the remaining three questions "yes," thereby finding that Prestin remained a child in need of protection or services. The court determined that there was an evidentiary basis for the jury's

---

trary to Wis. Stat. § 940.20(2); and two counts of "Escape," contrary to Wis. Stat. § 946.42(3)(a).

finding, and found on "that basis that the mother is unfit." The court then set a dispositional hearing for April 6, 2001.

¶ 15. At the hearing, the court heard testimony from Julie and from the social worker who had filed the earlier reports. The social worker testified that Prestin was adoptable and that the foster parents with whom he had lived since January 21, 2000, when he was first taken into custody, were interested in adopting him. The social worker recommended that the court terminate Julie's parental rights. The guardian ad litem assigned to Prestin's case agreed with the social worker's recommendation.

¶ 16. At the close of the dispositional hearing, the court dismissed the petition.[6] The court stated:

> I do not think that the findings warrant termination. Under Section 48.427(2) it provides, "The court may dismiss the petition if it finds . . . the evidence does not warrant the termination of parental rights."
>
> Here's the legal issue: Is the evidence of unfitness so egregious as to warrant termination of parental rights? That's from . . . the *B.L.J.* case, 163 Wis. 2d 90 at 103.[7] A finding of unfitness that warrants termination is not merely a find[ing] that termination is better for the child, "but essential to their safety or welfare, in some very serious and important respect." . . . *After this finding regarding unfitness warranting termination, then look to the best interests of the child* . . . (emphasis added).

---

[6] The court granted the petition to terminate the parental rights of James, who did not voluntarily relinquish his parental rights but who did not actively contest the petition or appear at the fact-finding or dispositional hearings.

[7] The circuit court's reference was to *B.L.J. v. Polk County Dep't of Soc. Servs.*, 163 Wis. 2d 90, 470 N.W.2d 914 (1991).

¶ 17. After the court discussed Julie's alcoholism and treatment needs and the relationship of Julie's jail stays to her failure to visit Prestin, it concluded that termination was not warranted:

> Therefore, this court finds the termination of contact between Julie [A.B] and Prestin is not essential to the child's safety or welfare. The evidence of unfitness does not warrant termination. . . . I think it's obvious to all of us the child is still in need of protection and services now. I fully anticipate that the CHIPS order will be renewed. . . .

¶ 18. The Department appealed, asserting that the court had applied the wrong legal standards in dismissing the petition. The court of appeals affirmed in a single-judge decision by Judge Snyder, determining that the circuit court had properly applied the standards established in *B.L.J.* and *Kelly S. Julie A.B.,* No. 01–1692, unpublished slip op., ¶¶ 1, 11–13. The court stated the standards as follows:

> After a jury has found evidence supporting termination of parental rights, the trial court must then determine whether such evidence is sufficiently egregious to support a termination of parental rights. . . .
>
> In arriving at the appropriate disposition, the court must first contemplate whether the parental unfitness is so great that it undermines the ability to parent. The trial court must then consider whether that inability to parent is seriously detrimental to the child.

*Id.* at ¶¶ 9–10 (citation omitted).

¶ 19. The Department appealed again, and we granted its petition for review to determine whether the standards for termination set forth in *B.L.J.* and *Kelly S.,* and relied upon in this case, are correct.

## ANALYSIS

¶ 20. This case concerns the standards to be applied by the circuit court in exercising its discretion at a dispositional hearing under Wis. Stat. § 48.427, after the court or a jury has found that grounds exist for termination of parental rights.

¶ 21. Termination of parental rights is governed by Subchapter VIII of Chapter 48 of the Wisconsin Statutes, the Children's Code. The "best interests of the child" represents a consistent legislative objective throughout the Children's Code. Wisconsin Stat. § 48.01(1) provides in part: "In construing this chapter, the best interests of the child . . . shall always be of paramount consideration." Wis. Stat. § 48.01(1); *see State v. Margaret H.*, 2000 WI 42, ¶ 33, 234 Wis. 2d 606, 610 N.W.2d 475.

¶ 22. Notwithstanding this broad language, the "best interests of the child" standard does not dominate every step of every proceeding, because other vital interests must be accommodated. When the government seeks to terminate parental rights, the best interests of the child standard does not "prevail" until the affected parent has been found unfit pursuant to Wis. Stat. § 48.424(4).[8] "[A] parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). This fundamental

---

[8] " 'Unfitness' is an absolute requirement before parental rights may be terminated. . . . Parental rights may only be terminated if the parent is unfit." *B.L.J.*, 163 Wis. 2d at 110.

liberty interest of parents "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer,* 455 U.S. 745, 753 (1982). "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.* Thus, when the state moves to terminate parental rights, "it must provide the parents with fundamentally fair procedures." *Id.* at 754.

¶ 23. " 'Termination of parental rights' means that, pursuant to a court order, all rights, powers, privileges, immunities, duties and obligations existing between parent and child are permanently severed." Wis. Stat. § 48.40(2). The profound consequences of termination have necessitated the development of detailed statutory requirements. They are set out in Subchapter VIII of Chapter 48. This subchapter provides the procedures to follow and the standards to apply. In its brief, the Department explains that "a parent is afforded numerous rights intended to safeguard his or her interests." These rights include:

> a right to a written petition with a statement of the grounds for involuntary termination of parental rights [Wis. Stat. § 48.42(1)]; a right to be personally served with the summons and petition [Wis. Stat. § 48.42(2) and (4)]; a right to have a hearing on the petition within 30 days [Wis. Stat. § 48.422(1)]; a right to a jury trial of twelve jurors and to have the allegations proven by clear and convincing evidence [Wis. Stat. §§ 48.31(1) and 48.422(4)]; a right to subpoena witnesses [Wis. Stat. §§ 48.31(2) and 805.07(1)]; and a right to an attorney [Wis. Stat. § 48.23(2)].

██

¶ 24. After the petition has been filed and the preliminaries have been completed, a contested termination proceeding involves a two-step procedure. *Eve-*

*lyn C.R. v. Tykila S.,* 2001 WI 110, ¶ 22–23, 246 Wis. 2d 1, 629 N.W.2d 768. The first step is the fact-finding hearing "to determine whether grounds exist for the termination of parental rights." Wis. Stat. § 48.424(1). "During this step, the parent's rights are paramount." *Id.* at ¶ 22 (citing *Minguey v. Brookens,* 100 Wis. 2d 681, 689, 303 N.W.2d 581 (1981)). During this step, the burden is on the government, and the parent enjoys a full complement of procedural rights.

¶ 25. Wisconsin Stat. § 48.415 sets out 11 different grounds for termination.[9] These grounds include abandonment, child abuse, homicide or solicitation to commit homicide of parent, and continuing need of protection or services.

¶ 26. At the close of the fact-finding hearing, the jury or the court determines "whether any grounds for the termination of parental rights have been proven." Wis. Stat. § 48.424(3). If the jury or court determines that the facts alleged in the petition have not been proven, the court dismisses the petition. Conversely, "[i]f grounds for the termination of parental rights are found by the court or jury, the court *shall* find the parent unfit." Wis. Stat. § 48.424(4) (emphasis added).

---

[9] The grounds for involuntary termination of parental rights set forth in Wis. Stat. § 48.415 are: (1) abandonment; (2) continuing need of protection or services; (3) continuing parental disability; (4) continuing denial of periods of physical placement or visitation; (5) child abuse; (6) failure to assume parental responsibility; (7) incestuous parenthood; (8) homicide or solicitation to commit homicide of parent; (9) parenthood as a result of sexual assault; (9m) commission of a serious felony against one of the person's children; and (10) prior involuntary termination of parental rights to another child.

Wis. Stat. § 48.415(1)-(10).

185

¶ 27. We recognized in *B.L.J.* that, notwithstanding a jury verdict, the court may dismiss a petition if it finds that the evidence "does not sustain any one of the jury's individual findings." *B.L.J.,* 163 Wis. 2d at 103.[10] This statement is consistent with the sufficiency-of-evidence principles in Wis. Stat. § 805.14.

██

¶ 28. When the fact-finding step has been completed and the court has made a finding of unfitness, the proceeding moves to the second step, the dispositional hearing. Wis. Stat. § 48.427. The outcome of this hearing is not predetermined, but the focus shifts to the interests of the child. At the dispositional hearing, the court may enter an order terminating the parental rights of one or both parents, Wis. Stat. § 48.427(3), or it may dismiss the petition if it finds the evidence does not warrant the termination of parental rights. Wis. Stat. § 48.427(2). Either way, *"[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition"* under section 48.427. Wis. Stat. § 48.426(1) and (2) (emphasis added). "The court shall decide what disposition is in the best interest of the child." Wis. Stat. § 48.424(3).

---

[10] The court explained this proposition as follows:

[W]here a jury finds all of the grounds for termination and the court enters its mandatory finding of unfitness pursuant to sec. 48.424 Stats., if the court determines the evidence for any one of the . . . findings does not support the jury finding, that would be reason to dismiss the petition because a "finding" of unfitness cannot be sustained if one of the . . . required findings is not, in the court's opinion, supported by "clear and convincing evidence."

*B.L.J.,* 163 Wis. 2d at 105.

¶ 29. The circuit judge is not an automaton. The decision whether to terminate a parent's rights to a child can be one of the most wrenching and agonizing in the law. "Any party may present evidence relevant to the issue of disposition, including expert testimony, and may make alternative dispositional recommendations to the court." Wis. Stat. § 48.427(1). The court should welcome this evidence. It may consider factors favorable to the parent, including prognosis for the parent's markedly changed behavior. But the court *shall* consider any report submitted by an agency under § 48.425, and it *shall* consider the six factors set out in § 48.426(3):

(3) FACTORS. *In considering the best interests of the child under this section* the court shall consider but not be limited to the following:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the

187

conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Wis. Stat. § 48.426 (emphasis added).

¶ 30. The court should explain the basis for its disposition, on the record, by alluding specifically to the factors in Wis. Stat. § 48.426(3) and any other factors that it relies upon in reaching its decision. In every case the factors considered must be calibrated to the prevailing standard. The "best interests of the child is the polestar of all determinations under ch. 48." *David S. v. Laura S.*, 179 Wis. 2d 114, 149, 507 N.W.2d 94 (1993). "The court *shall* decide what disposition is in the best interest of the child." Wis. Stat. § 48.424(3) (emphasis added).

¶ 31. We think the statutory requirements are clear and unambiguous. Nonetheless, in this case, the circuit court dismissed the petition without ever considering the best interests of the child.

¶ 32. Julie asserts that the circuit court was correct, that it faithfully followed the standards established in *B.L.J.* Several passages in *B.L.J.* clearly imply that the circuit court is to consider standards other than the best interests of the child at the dispositional hearing. The court of appeals heavily relied on these passages when it decided *Kelly S.* As a result, we are bound to reexamine the *B.L.J.* decision.

¶ 33. *B.L.J.* was decided in 1991. It dealt with a parental termination that occurred five months after a significant change in the termination statute. Prior to May 3, 1988, Wis. Stat. § 48.424(4) read in part: "If grounds for the termination of parental rights are found the court shall proceed immediately to hear

evidence and motions related to the dispositions enumerated in s. 48.427." Wis. Stat. § 48.424(4) (1985–86). In 1988, the legislature enacted 1987 Wis. Act 383, amending subsection (4) to read in part: "If grounds for the termination of parental rights are found by the court or jury, *the court shall find the parent unfit.* A finding of unfitness shall not preclude a dismissal of a petition under s. 48.427(2)." Wis. Stat. § 48.424(4) (emphasis added).

¶ 34. In *B.L.J.* the mother whose parental rights were terminated challenged the constitutionality of revised subsection (4). In upholding the statute, the *B.L.J.* court rejected the mother's argument that the circuit court had to make its own independent finding of unfitness. It observed that, "The legislature has determined that where those facts are established [that is, where the jury finds grounds for termination], it shows that a parent is unfit." *B.L.J.,* 163 Wis. 2d at 110.

¶ 35. The court took pains, however, to emphasize that significant discretion remained with the circuit court. It pointed to the new sentence in subsection (4) of Wis. Stat. § 48.424: "A finding of unfitness shall not preclude a dismissal of a petition under sec. 48.427(2)," and it quoted § 48.427(2): "The court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights." *Id.* at 103. The court then reasoned:

> This means that even though the jury finds the "facts" that would constitute "grounds" for termination, the court may still dismiss the petition if the court finds either that the evidence does not sustain any one of the jury's individual findings or that *even though the findings may be supported by the evidence, the evidence of unfitness is not so egregious as to warrant termination of parental rights.* This conclusion follows from the

189

> wording of sec. 48.427 (2), Stats., that the evidence "does not warrant the termination of parental rights." Thus, it seems clear that in spite of what the evidence may show, whether such evidence warrants termination, is a matter within the discretion of the court. This is so because the word "warrant" implies an overview of the evidence, the findings, and also the implication of what is in the best interest of the child.

*Id.* at 103–04 (emphasis added).

¶ 36. The court's arresting phrase—"the evidence of unfitness is not so egregious as to warrant termination of parental rights"—is unfortunate because it implies degrees of "unfitness" that have legal significance. In addition, it has been interpreted as requiring an intermediate step between fact-finding by the jury and disposition by the court, in which the court must decide whether the parent's already established unfitness is "egregious" enough to warrant considering termination as a disposition. This interpretation cannot be squared with the statutory language.

¶ 37. Once a basis for termination has been found by the jury and confirmed with a finding of unfitness by the court, the court must move to the second-step, the dispositional hearing, in which the prevailing factor— the polestar—is the best interests of the child.

¶ 38. The termination statute does not require the termination of parental rights, but it does require the court to consider the best interests of the child. Hence, at a dispositional hearing, the court must explore the child's best interests and then determine whether maintaining the parent's rights serves the child's best interests. A court should not dismiss a petition for termination at a dispositional hearing un-

190

less it can reconcile dismissal with the best interests of the child. The best interests of the child standard "is to be defined in relation to the child." *Sallie T. v. Milwaukee County DHHS,* 219 Wis. 2d 296, 311, 581 N.W.2d 182 (1998).

¶ 39. *B.L.J.* contains additional problematic language. The court quoted language from *Lemmin v. Lorfeld,* 107 Wis. 264, 266, 83 N.W. 359 (1900), a turn-of-the-last-century termination case, to the effect that termination "is not merely better for the children, but essential to their safety or to their welfare, in some very serious and important respect."[11] *B.L.J.,* 163 Wis. 2d at 113. The *B.L.J.* court said it agreed with this "standard," to be applied in the exercise of discretion in terminating parental rights. *Id.* The court summed up as follows:

> Even if the jury finds all of the grounds for termination of parental rights, and the judge thereby enters the statutory finding of unfitness, the evidence must still support the jury findings. If not, the judge may dismiss the petition for lack of clear and convincing evidence. If the evidence supports the jury's findings, *the judge, pursuant to Lemmin, makes a determination of whether termination of contact between the parent and the child is essential to the child's safety or welfare, in a very serious and important respect. If it does not then the judge may determine, pursuant to the statute, that termination is not warranted and may dismiss the petition.* The discretion that the statute vests in the court to dismiss the petition for termination if it finds

---

[11] The court in *Lemmin v. Lorfeld,* 107 Wis. 264, 266, 83 N.W. 359 (1900), actually quoted from an earlier decision, *Markwell v. Pereles,* 95 Wis. 406, 69 N.W. 798 (1897), which in turn was quoting from an English case.

termination is not warranted under the standards assures full, substantive due process.

*Id.* at 115 (emphasis added).

¶ 40. Given this language, it is not surprising that the court of appeals wrote in *Kelly S.* that:

> We conclude that *B.L.J.* sets forth a two-part sequential test in determining whether the parent's unfitness was to such an egregious degree that it warranted termination. First, the trial court must answer whether the ability to function as a parent has been undermined. Second, if so, then the trial court must determine whether further contact between child and parent will be detrimental to the child.

*Kelly S.,* 2001 WI App 193, ¶ 10.

¶ 41. The additional standards and procedures set out in *B.L.J.* and *Kelly S.* are simply at war with the standards and procedures set out in Chapter 48 of the Wisconsin Statutes. This court's fidelity to outdated precedent in the face of a new statute and its exuberant effort to defend the new statutory scheme from constitutional attack, have together created doctrinal error that cannot stand. We withdraw from *B.L.J.* any language, standards, or implied procedures not consistent with this opinion, and we overrule *Kelly S.*

¶ 42. No inference should be drawn from this opinion that, at a dispositional hearing, dismissal is the exception and termination is the rule. The best interests of the child will always drive the court's inquiry. The facts of record should influence the result. Ultimately, however, the wise and compassionate discretion of the court will determine whether termination will "promote the best interests of the child." *Mrs. R. v. Mr. and Mrs. B.,* 102 Wis. 2d 118, 131, 306 N.W.2d 46 (1981)

(quoting *In re Johnson,* 9 Wis. 2d 65, 75, 100 N.W.2d 383 (1960); *Termination of Parental Rights of Kegal,* 85 Wis. 2d 574, 271 N.W.2d 114 (1978)).

¶ 43. We now turn to this case. A circuit court properly exercises its discretion when it employs a rational thought process based on an examination of the facts and an application of the correct standard of law. *David S.,* 179 Wis. 2d at 150. For understandable reasons, the circuit court in this case did not apply a correct standard of law at the dispositional hearing, and we must conclude that it erroneously exercised its discretion. We therefore reverse the decision of the court of appeals and remand this case to the circuit court for a new dispositional hearing consistent with this opinion. The court should take into account the circumstances at the time of the new hearing, not those in existence at the time it dismissed the petition. *Margaret H.,* 2000 WI 42, ¶ 39 n.6.

## CONCLUSION

¶ 44. We conclude that the circuit court in this case applied incorrect legal standards in dismissing the petition for termination of parental rights, and therefore erroneously exercised its discretion. We further conclude that the court of appeals applied the same incorrect standards in affirming the circuit court decision. We therefore reverse the decision of the court of appeals, and remand the case to the circuit court so that it may conduct a new dispositional hearing focused on the best interests of the child, and enter a dispositional order consistent with that standard. We also modify the legal standards set forth in *B.L.J.* and overrule *Kelly S.*

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.