# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 10, 2019

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1336**
**2019AP1337**
**2019AP1338**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2017TP93**
**2017TP94**
**2017TP95**

## IN COURT OF APPEALS
## DISTRICT IV

---

### NO. 2019AP1336

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K. D.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

T. R.,

   RESPONDENT-APPELLANT.

---

### NO. 2019AP1337

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K. S.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

V.

**T. R.,**

   **RESPONDENT-APPELLANT.**

NO. 2019AP1338

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. S.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

**T. R.,**

   **RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Dane County: SHELLEY GAYLORD, Judge. *Affirmed*.

¶1      BLANCHARD, J.[1]  T.R. appeals the circuit court's orders terminating her parental rights to three children, K.D., K.S., and A.S., on the petitions of the Dane County Department of Human Services (the County).  She challenges only the circuit court's rulings in the dispositional phase and makes no arguments regarding the grounds phase.  She argues that the court erroneously

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

exercised its discretion in three ways: (1) by failing to consider whether the children have substantial relationships with one another and whether termination of her parental rights would sever those child-to-child relationships in a harmful manner; (2) by failing to reflect adequate consideration of the factors pertinent to the disposition of a termination of parental rights case under WIS. STAT. § 48.426(3); and (3) by failing to adequately consider the potential consequences of T.R. losing her parental rights in light of the prospect of the father of K.S. and A.S. retaining his parental rights to both children. I reject T.R.'s arguments and affirm.

## BACKGROUND

¶2    In December 2017, the County petitioned for the termination of T.R.'s parental rights to the children, in addition to the termination of the rights of the father of K.D. and the father of K.S. and A.S.[2]  K.D.'s father defaulted,

---

[2] Our supreme court has summarized the pertinent procedures for termination of parental rights under WIS. STAT. ch. 48 as follows:

> [A] contested termination proceeding involves a two-step procedure. The first step is the fact-finding hearing "to determine whether grounds exist for the termination of parental rights." .…
>
>     ....
>
> At the close of the fact-finding hearing, the jury or the court determines "whether any grounds for the termination of parental rights have been proven." … "[I]f grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit."
>
>     ….
>
> When the fact-finding step has been completed and the court has made a finding of unfitness, the proceeding moves to the second step, the dispositional hearing.

(continued)

resulting in the termination of his rights. T.R. and the father of K.S. and A.S. each contested the County's petitions.

¶3 A jury trial was held to determine if grounds existed to terminate T.R.'s parental rights, or the rights of K.S. and A.S.'s father, under WIS. STAT. § 48.415(6) (failure to assume parental responsibility).[3] The jury determined that T.R. had failed to assume parental responsibility for each of the three children. The jury also determined that the County did not establish that K.S. and A.S.'s father had failed to assume parental responsibility. Based on these verdicts, the case proceeded to the disposition phase regarding only T.R.'s parental rights.

¶4 The court held a dispositional hearing in March 2019. The court issued a written dispositional order terminating T.R.'s parental rights as to each child. T.R. appeals. I provide additional background regarding the dispositional hearing and the court's order as needed for discussion below.

## DISCUSSION

¶5 We review the circuit court's disposition of a termination of parental rights case for an erroneous exercise of discretion. *See Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶4, 42, 255 Wis. 2d 170, 648 N.W.2d 402.

---

*Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24, 26, 28, 255 Wis. 2d 170, 648 N.W.2d 402 (citations omitted).

[3] Before trial, the circuit court granted the County's motion to dismiss the only other ground for termination alleged in the petitions against T.R. and against K.S. and A.S.'s father, the "continuing need of protection of services" ground under WIS. STAT. § 48.415(2).

¶6      A court exercising its discretion in determining the appropriate disposition "shall consider the standard and factors enumerated in" WIS. STAT. § 48.426(2) and (3) respectively.  *See* § 48.426(1).  "The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings."  Sec. 48.426(2).[4]

¶7      "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor."  ***Darryl T.-H. v. Margaret H.***, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

---

[4] In applying the best interests standard of WIS. STAT. § 48.426(2) "the court shall consider but not be limited to" the following factors:

> (a) The likelihood of the child's adoption after termination.

> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

> (d) The wishes of the child.

> (e) The duration of the separation of the parent from the child.

> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶8    T.R. contends that the court failed to give adequate consideration to one particular factor: "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." *See* WIS. STAT. § 48.426(3)(c). Specifically, she contends that the court failed to adequately address this substantial-relationships factor by overlooking the harm that termination of her parental rights would cause due to the resulting "legal severance" of relationships between the two biological siblings (K.S. and A.S.) and their biological half-sibling (K.D.). *See **Margaret H.**,* 234 Wis. 2d 606, ¶¶25-27. ("As a matter of law, the termination of parental rights results in a *legal severance* of the relationship between a child and the child's family"; the circuit court "consider[s] the adverse effects stemming from the dissolution of the legal rights and duties of the birth family") (emphasis added). I now provide additional background pertinent to T.R.'s "legal severance" argument based on the substantial-relationships factor and then explain why I reject it.

¶9    T.R. notes that the court heard evidence indicating that the relationships among the three children were substantial, even though siblings K.S. and A.S. have been consistently placed together in a different foster home than the foster home of their half-sibling K.D. K.D.'s foster parents testified that they were open to continuing contact between K.D. and the other two children in the event that T.R.'s parental rights were terminated. Similarly, K.S. and A.S.'s foster father testified that his family was open to continuing contact between those two and K.D.

¶10    The court discussed in its written order the severing of substantial relationships factor under WIS. STAT. § 48.426(3)(c), focusing in detail on the relationships of each child with T.R. and of each child with T.R.'s relatives. The

6

court found that none of the three children had substantial relationships with members of their extended maternal family. The court also found that it would not be harmful overall for the three children to have their specific relationships with T.R. legally severed. T.R. does not challenge any of these findings. Instead, her argument is limited to a contention that the circuit court failed to make a sufficiently explicit finding regarding other relationships.

¶11 The court did not explicitly address whether the children have substantial relationships with one another or if severing their relationships with each other would be harmful. However, the court did not ignore relationships among the three children as a topic relevant to the overarching best interests determination. In the course of discussing another factor, the likelihood of adoption pursuant to WIS. STAT. § 48.426(3)(a), the court noted that K.D.'s foster parents "provide opportunities for [K.D.] interacting positively with" K.S. and A.S.

¶12 I assume without deciding that K.D. has substantial relationships with K.S. and A.S., despite living apart from them. I further assume that the termination of T.R.'s rights effects "legal severance" of the children's relationships with each other. *See Margaret H.*, 234 Wis. 2d 606, ¶¶25-26. With those assumptions, the issue is whether the circuit court sufficiently considered the children's relationships with one another in its discussion of the WIS. STAT. § 48.426(3)(c) factor. I conclude that it did.

¶13 I understand T.R.'s argument to be premised on the proposition that a circuit court has not adequately addressed the substantial-relationships factor, WIS. STAT. § 48.426(3)(c), unless the court considers the potential effects— whether those effects are harmful or not—created by the severing of *every*

7

substantial relationship due to a proposed termination of parental rights. Under T.R.'s proposition, it would be inadequate to consider only the substantial relationships that the court reasonably considers most pertinent to the best interests of the children based on the evidence and the arguments of the parties. I assume without deciding that this proposition is correct. I conclude that the court considered all relevant evidence regarding the children's relationships with each other and implicitly found that the effect of severing these relationships was not unduly harmful in a way that outweighed other considerations. I reach this conclusion based on the court's acknowledgement that the foster parents agreed that they would facilitate interactions between the two sets of children and the court's detailed discussion of the non-harmful—indeed, net positive—effects of the severance of maternal family relationships, including T.R., that would be caused by the termination of T.R.'s rights. *See Margaret H.*, 234 Wis. 2d 606, ¶29 ("In its discretion, the court may afford due weight to an adoptive parent's stated intent to continue visitation with family members.").

¶14 Further, even if the implicit nature of the court's finding on this point renders its consideration of WIS. STAT. § 48.426(3)(c) "inadequate," my review of the record supports the court's determination that this factor weighed in favor of termination, not against it. *See Margaret H.*, 234 Wis. 2d 606, ¶37 (When presented with "inadequate findings," "[a]n appellate court may… review the record anew and affirm if a preponderance of evidence clearly supports the judgment"). Here, the *only* evidence pertinent to this topic appears to be the testimony of the children's respective foster parents regarding their willingness and support for keeping the children in contact with one another. In that sense, the preponderance of the evidence in the record shows that the legal severance of the children's relationships would not be harmful. And, T.R. fails to suggest what

evidence the court could have relied on to support a finding that legal severance of the relationships of the children to one another would be harmful, given the unrebutted testimony that the two sets of children will be allowed to continue to see each other.

¶15     T.R. argues that the court's written order failed to reflect adequate consideration of the factors listed in WIS. STAT. § 48.426(3) as applied to the facts of the case. *See Margaret H.*, 234 Wis. 2d 606, ¶35 ("While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor."). Specifically, T.R. argues that the court's order merely recites some evidence pertinent to each of the factors, without explaining how the court weighed the evidence in support of terminating T.R.'s parental rights, or explaining the relative weight that the court was giving to each factor. For the following reasons, I reject both aspects of T.R.'s argument.

¶16     The court's memorandum decision made clear that it concluded from its overall analysis that the WIS. STAT. § 48.426(3) factors supported termination, before listing facts explicitly organized by factor.

¶17     T.R. argues that the court's discussion of one particular factor does not clearly weigh for or against termination, and suggests that this was exemplary of the court's discussion in general. The court noted—in the course of addressing "[t]he age and health of the child[ren], both at the time of" disposition and their removal from the home under WIS. STAT. § 48.426(3)(b)—that they "were not unhealthy" at the pertinent times. I agree with T.R. that the court's discussion of this factor, in isolation, does not clearly indicate whether the court thought that it

weighs for or against the termination of T.R.'s parental rights. However, this is not exemplary of the court's discussion of the other factors.

¶18 The court's discussion of each other factor clearly supports the court's ultimate conclusion to terminate T.R.'s parental rights. For example, the court's discussion of the substantial relationships severed by the termination of T.R.'s parental rights included the following:

> Although the children know [T.R.] is their mother and sometimes express love for her[,] as she does for them, that fact of love alone does not mean it is harmful to sever their relationships with her. It could hardly be more clear they are in a crucial stage[,] and have been for some time[,] of needing to end what is … overall unpleasant and detrimental interaction with [T.R.].

Both before and after making these observations, the court discussed examples of T.R.'s inappropriate or neglectful conduct with respect to the children individually and as a group (findings that T.R. does not challenge). As a whole, this discussion exemplifies how the court considered evidence pertinent to the substantial-relationship factor that weighed both for and against termination of parental rights, but further explained why, in the court's discretion, the evidence for termination was weightier.

¶19 Regarding relative weight, the court properly noted that its assessment of the "best interests" of each child was the "overarching consideration" in its analysis. *See* WIS. STAT. § 48.426(2); *Margaret H.*, 234 Wis. 2d 606, ¶¶33-34 (describing the best interests of the child as "the proper legal standard governing a proceeding to terminate parental rights," when the factors codified in § 48.426(3) "give contour" to that standard). The circuit court did not need to say more about the relative weight of each factor, because the court did not

indicate that any factor weighed against termination and explained why most factors clearly supported termination.

¶20    T.R. argues that, regarding biological siblings K.S. and A.S. in particular, the court failed to "adequately consider the prospect and consequences of terminating" T.R.'s parental rights while the parental rights of their father "may remain intact."[5]  For example, T.R. contends, if the father continues to retain his parental rights and T.R.'s rights are terminated, K.S. and A.S. may never be eligible for adoption.

¶21    I reject this argument based on the fact that the court's memorandum decision demonstrates that the court carefully considered the fact that K.S. and A.S.'s father's parental rights would persist, at least for a time, beyond the termination of T.R.'s rights.  The court noted that K.S. and A.S. "will not be in a position to be adopted unless and until their father's rights are terminated."  The court further stated that K.S. and A.S., who were placed with a foster family outside of the father's home, would not be reunited with the father unless he demonstrated the ability to "protect[] the children from" T.R.  Citing several incidents involving T.R. and the father, the court determined that K.S. and A.S. were "much more likely than not to remain in out[-]of[-]home care for an extended time."  T.R. does not challenge any of these determinations.  Later in its decision, the court characterized the termination of T.R.'s parental rights regarding K.S. and A.S. as an "important step toward permanency," even though the pending

---

[5] The court noted, at the time of its disposition of T.R.'s case, that the County had renewed a petition against K.S. and A.S.'s father to terminate his parental rights on the "continuing need of protection or services" ground under WIS. STAT. § 48.415(2).

nature of the case regarding their father's rights prevented it from being a complete step, as would be the case for K.D., given his immediate eligibility for adoption.

¶22    In reply, T.R. contends that the court's discussion summarized immediately above inadequately considered all of the complications that could arise from K.S. and A.S.'s father retaining his rights.  T.R.'s argument boils down to the following:  the court's decision did not enumerate all facts and considerations that arguably supported refraining from terminating T.R.'s parental rights.  This argument is inconsistent with the standard of review applied to a court's discretionary decision.  In sum, the court's discussion on this topic demonstrates that it employed "a rational thought process based on an examination of the facts and an application of the correct standard law."  *See Julie A.B.*, 255 Wis. 2d 170, ¶43.

¶23    For all these reasons, I reject T.R.'s arguments that the circuit court erroneously exercised its discretion in ordering the termination of her parental rights as being in the best interest of K.D., K.S., and A.S.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.