COURT OF APPEALS
DECISION
DATED AND FILED

September 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP962**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018TP261**

**IN COURT OF APPEALS
DISTRICT I**

---

IN THE INTEREST OF L.B., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

K.A.B.,

      RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed.*

¶1 BRASH, P.J.[1] K.A.B. appeals the order of the trial court terminating her parental rights for L.B. She argues that the trial court did not

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

properly exercise its discretion in its consideration of the statutory factors relating to the best interests of the child, particularly with regard to the question of whether the child had a substantial relationship with the parent, as set forth at WIS. STAT. § 48.426(3)(c). We affirm.

## BACKGROUND

¶2 K.A.B. is the biological mother of L.B., who was born April 22, 2015. L.B.'s biological father is unknown.

¶3 L.B. was detained by the Division of Milwaukee Child Protective Services (DMCPS) at the time of her birth. She was born with marijuana in her system. Furthermore, K.A.B. has a long history of mental illness which had resulted in her being hospitalized multiple times over the years "due to suicidal— and homicidal—ideation" as well as "paranoid and delusional thoughts[.]" She also admitted to daily marijuana use.

¶4 Additionally, K.A.B. had a son who had been removed from her care in 2014 based on allegations of abuse and neglect. Her parental rights with regard to that child were terminated in 2016.

¶5 A dispositional order based on the petition for protection or services for L.B. was entered in July 2016. The order listed a number of requirements that K.A.B. had to meet before L.B. would be returned to her care. The first requirement was for K.A.B. to demonstrate that she had control of her mental health. She also had to provide a safe, suitable home for L.B., as K.A.B. had been living in a shelter prior to giving birth to L.B., and then had moved in with her mother, R.B.B., with whom she had a strained relationship due to K.A.B.'s mental health issues. DMCPS offered a number of programs to assist K.A.B. in meeting

these requirements, including a psychological evaluation and psychiatric treatment, therapy and medication management, parenting services, and home management services. Additionally, K.A.B. was required to have regular visits with L.B.

¶6 K.A.B. failed to meet these requirements. She did not complete her psychological evaluation and was very inconsistent with her medication management appointments, missing several months at a time. Furthermore, K.A.B. seemed to be convinced that there was something physically wrong with L.B., despite being advised by medical staff that L.B. was developing normally. For example, K.A.B. took L.B. to an allergist and requested that she be tested for "all allergies." The allergist, however, explained that such tests were invasive and would not be performed unless L.B. had experienced a reaction to something, which she had not. K.A.B. also claimed that L.B. was suffering from alopecia, until a doctor explained to K.A.B. that alopecia is a condition that causes hair loss. Additionally, K.A.B. made an appointment for L.B. with an occupational therapist, who informed K.A.B. that L.B. did not need therapy and was developing normally.

¶7 Moreover, K.A.B.'s visits with L.B. did not "go[] well." L.B. would run and hide upon learning that she was to visit with K.A.B., and would not speak to K.A.B. unless she was prompted. Because of these issues, visits could only take place in a therapeutic setting.

¶8 As a result, a petition for the Termination of Parental Rights (TPR) of K.A.B. with regard to L.B. was filed in November 2018. In the petition, the State's alleged grounds for termination included the continuing need of protection

or services for L.B., pursuant to WIS. STAT. § 48.415(2), and K.A.B.'s failure to assume parental responsibility, pursuant to § 48.415(6).[2]

¶9      A court trial was held in January 2020, at which time the trial court found that the State had proven both grounds. A dispositional hearing was held shortly thereafter, on January 21, 2020. At that hearing, testimony was taken from K.A.B., R.B.B., L.B.'s foster mother, and the case manager.

¶10      At the conclusion of that hearing, the trial court considered the evidence as it related to the factors set forth at WIS. STAT. § 48.426(3) and, ultimately, what was in the best interest of L.B., in accordance with § 48.426(2). The court made a finding that L.B. has a "strong relationship and bond" with her foster parents and their biological son, as well as to a younger biological sibling to L.B. that was also placed with those foster parents. Indeed, the court noted that L.B. was placed with those foster parents three days after her birth, and that she had never known any other home.

¶11      The trial court also made findings with regard to the existence of a substantial relationship between L.B. and her biological family. The court acknowledged that L.B. is "a meaningful part" of the lives of both K.A.B. and R.B.B. However, the court pointed out K.A.B.'s inconsistencies with regard to visitation—failing to come to visits, cancelling visits, or leaving visits early. The

---

[2] The initial TPR petition included the ground that K.A.B. had her parental rights to another child involuntarily terminated within three years of this action, pursuant to WIS. STAT. § 48.415(10). However, the State filed an amended TPR petition in January 2019 eliminating that ground. The TPR petition was subsequently amended a second time to reflect changes in the statutory language of WIS. STAT. § 48.415(2); specifically, the elimination of language regarding a parent's likelihood of meeting required conditions within a nine-month time period after the fact-finding hearing.

court further noted L.B.'s behavioral issues and the "resistance" she exhibited to visits with K.A.B. Additionally, the court observed that R.B.B. had not had regular visitation with L.B., either. The court found that this evidence indicated that there was not a substantial relationship between L.B. and either K.A.B. or R.B.B.

¶12 Ultimately, the trial court found that it was in the best interest of L.B. for K.A.B.'s parental rights to be terminated.[3] This appeal follows.

## DISCUSSION

¶13 K.A.B.'s appeal focuses on the third factor to be considered by the trial court in determining the best interests of the child: "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." *See* WIS. STAT. § 48.426(3)(c).

¶14 "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. In making this determination, "the best interests of the child is the paramount consideration" for the trial court. *Id.*, ¶33. The trial court's decision should reference the factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition. *Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402. We will uphold the trial court's decision to

---

[3] The parental rights of L.B.'s unknown biological father were also terminated during these proceedings, but that order is not a part of this appeal.

terminate parental rights "if there is a proper exercise of discretion," that is, if the trial court applied the correct standard of law to the facts of the case. *See Margaret H.*, 234 Wis. 2d 606, ¶32.

¶15    K.A.B. asserts that the trial court ignored evidence that K.A.B. and R.B.B. had "significant contact" with L.B.  However, having "significant contact" with a child is not the same as having a substantial relationship.  Indeed, the court discussed the "strong relationship and bond" that L.B. has with her foster family, and contrasted that with K.A.B.'s and R.B.B.'s lack of consistent visitation, as well as the problems that occurred when there were visits.  K.A.B. contends that evidence of other possible reasons for L.B.'s behavior during these visits should have given greater weight by the trial court.  However, "[w]hen the [trial] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony," and even if more than one reasonable inference could be drawn from credible evidence, "the reviewing court must accept the inference drawn by the trier of fact." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶16    Furthermore, the record reflects that the trial court made findings relating to all of the other statutory factors as well.  Therefore, we conclude that the trial court properly exercised its discretion in its application of the law to the facts of the case.  *See Julie A.B.*, 255 Wis. 2d 170, ¶30.  Accordingly, we affirm the order terminating K.A.B.'s parental rights to L.B.

>    *By the Court.*—Order affirmed.

>    This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

6