# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP311**

STATE OF WISCONSIN

Cir. Ct. No. 2019TP98

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.W., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

A.A.,

      RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

¶1 BRASH, C.J.[1] A.A. appeals the order of the trial court terminating her parental rights to T.W. A.A. argues that the court erroneously exercised its discretion when it determined that it was in the best interests of T.W. to terminate A.A.'s parental rights. Upon review, we affirm.

## BACKGROUND

¶2 A.A. is the biological mother of T.W., born in October 2016.[2] T.W. was born at twenty-four weeks gestation and had "exceptional medical needs" at birth. His diagnoses included bronchopulmonary dysplasia, anemia, a congenital deformity of his left foot, feeding problems, and hypertension. He spent a significant amount of time in the neonatal intensive care unit and required several surgeries.

¶3 T.W. was not discharged from the hospital until May 2017. Due to his medical needs, T.W. required twenty-four hour care, which entailed certain tasks his parents had to learn prior to taking him home relating to his oxygen use, tube feedings, and medications. However, his parents were "kicked out" of the hospital several times due to their "inappropriate behavior." For example, there was an incident where A.A. punched T.W.'s father in the face several times while at the hospital and was cited by the sheriff's department. Additionally, T.W.'s father "was observed exhibiting intimidating behaviors in the hospital such as

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The parental rights of T.W.'s father were also terminated as a result of these proceedings; however, he is not a part of this appeal.

2

hiding, following nursing staff, and blocking staff members in corners." He was ultimately banned from the hospital as a result of this conduct.

¶4      T.W. was detained by the Division of Milwaukee Child Protective Services (DMCPS) in August 2017, approximately three months after he was discharged from the hospital. The grounds included concerns about domestic violence as well as medical neglect, such as T.W. "being without his oxygen for an unknown period of time, not having his boot on his foot following surgery, and not receiving his medication."

¶5      As a result, T.W. was found to be a child in need of protection or services (CHIPS). A CHIPS dispositional order was entered in September 2018 which listed a number of conditions that had to be met before T.W. could be returned to his parents' care. Those conditions included demonstrating the ability to meet all of T.W.'s medical needs and an understanding of his other special needs; not allowing domestic violence in their home; and controlling their mental health needs. Regular visitation with T.W. was also required.

¶6      A.A. failed to meet these conditions. She did not attend any of T.W.'s numerous medical appointments and thus could not demonstrate that she understood his special needs and would be able to care for him. DMCPS offered parenting classes as well as a specialized parenting aide to assist A.A. with this, but she only partially utilized these services and did not "appear to be able to understand her child's needs." A.A. also refused to participate in domestic violence counseling, and she failed to regularly attend therapy for her mental health issues although she had been diagnosed with bipolar disorder and depression. Additionally, A.A. was inconsistent in her visitation with T.W., which was impacted by A.A.'s moving to Indiana.

¶7      Therefore, a petition for the Termination of Parental Rights (TPR) with regard to T.W. was filed in June 2019.  In the petition, the State's alleged grounds for termination included the continuing need of protection or services for T.W., pursuant to WIS. STAT. § 48.415(2), and A.A.'s failure to assume parental responsibility, pursuant to § 48.415(6).

¶8      A.A. entered a no-contest plea to the continuing CHIPS ground of the petition in October 2019, and the matter proceeded to a dispositional hearing in August 2021.  A.A. did not appear until the hearing was well under way, claiming that the hearing had been rescheduled without her knowledge, and that she had just received a notice in the mail with the correct hearing date, even though she was present in court when the hearing date had been set.  The trial court, which had found A.A. to be in default, "lifted" that default ruling only for purposes of allowing A.A. to testify.

¶9      A.A. testified that she had moved to Indiana after the CHIPS order was entered to be closer to her family and because there were "better opportunit[ies]" there for her and T.W.  She stated that she had a therapist in Indiana, and that she had participated in domestic violence and anger management counseling there as well.  She also said that she was attending college and was about to launch her own business.

¶10      She further testified that she had maintained consistent visits with T.W. through video calls during the pandemic, and that she had one physical visit with him in March 2021 but had missed a subsequent visit in May due to her college internship.  She also noted that she was "looking at an autistic class" for T.W.

¶11    A.A.'s case manager also testified at the hearing. The case manager stated that A.A. had not been in contact with her since May 2021. She said that A.A. also had never contacted any of T.W.'s doctors, so her knowledge of his needs and the level of care he requires is "pretty minimal." The case manager further stated that prior to the March 2021 visit, it had been "years" since A.A. had last visited T.W., even though DMCPS had offered to provide A.A. with bus tickets for transportation from Indiana.

¶12    Additionally, the case manager described T.W.'s many "medical and developmental" issues, including being nonverbal, autistic, and diagnosed with ADHD. She said that T.W. had several previous placements in other foster homes, but those had "fallen through," likely due to T.W.'s numerous health issues and the "long-term unknown" relating to those issues. However, the case manager declared that T.W.'s current foster parent was "fantastic with him," understood all of his needs, and was committed to adopting him.

¶13    Furthermore, the case manager stated that if the TPR petition was not granted, T.W. would likely stay in foster care because his parents had not made any "substantial behavior change" in order to meet the conditions for return as set forth in the CHIPS order. Moreover, they did not have a "significant relationship" with T.W., and they had not "shown an interest in really wanting him home."

¶14    T.W.'s foster parent also testified. She confirmed that she is an adoptive resource for T.W. and that she feels like he is already part of her family. She further stated that she had no concerns regarding caring for T.W. with all of his health concerns; in fact, she noted that her brother has some of the same issues and she had helped with his care.

¶15    The trial court then reviewed the statutory factors for determining what was in the best interest of T.W.  The court noted the length of time that T.W. had spent in foster care, which was four years at that point.  Thus, the court determined that there was not a substantial relationship between T.W. and his parents, stating, "It's not a relationship when you visit when it's okay for you to visit.  It's not a relationship while someone else steps in as the primary caretaker when you don't have the time."

¶16    The trial court also observed the foster parent's willingness to adopt T.W., that she was well aware of his health problems, and that she had experience dealing with her brother's similar problems.  The court found that this would likely be a more stable and permanent family relationship for T.W.  The court also stated that, with regard to the factor relating to the child's wishes, although T.W. was "too young to state his preference," he "gravitates towards" his current foster parent.  Therefore, the court determined that it was in the best interest of T.W. that the parental rights of A.A., and his father, be terminated.  This appeal follows.

## DISCUSSION

¶17    On appeal, A.A. asserts that the trial court erroneously exercised its discretion in determining that the termination of her parental rights was in the best interest of T.W.  "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475.  We will uphold this decision if the trial court applied the correct standard of law to the facts of the case.  *See id.*, ¶32.

¶18    In making the determination to terminate parental rights, "the best interests of the child is the paramount consideration" for the trial court.  *Id.*, ¶33. The trial court's decision should reference the factors set forth in WIS. STAT.

6

§ 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition. ***Sheboygan Cnty. DHHS v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402.

¶19 The statutory factors that the trial court is required to consider are:

**(a)** The likelihood of the child's adoption after termination.

**(b)** The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

**(c)** Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

**(d)** The wishes of the child.

**(e)** The duration of the separation of the parent from the child.

**(f)** Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶20 The record indicates that the trial court referenced all of these factors in its decision, as discussed above, and found that the evidence relating to each factor weighed in favor of the termination of parental rights. Indeed, A.A.'s argument is not that the court did not consider the proper factors, but rather that it should have weighed the evidence more favorably toward her.

¶21 For example, the trial court stated that it "g[a]ve a lot of weight" to the fact that T.W. had been in foster care for four years—most of his life. A.A. testified that during that time, she had attended college and started her own

7

business, which she believes should have been afforded great weight by the trial court. However, the court pointed out that while A.A. had "improved herself according to her," in the meantime, others had to care for T.W. In other words, A.A. had put her own needs ahead of T.W.'s needs.

¶22 The trial court further stated that T.W.'s current foster parent had the "desire to meet" all of T.W.'s special needs, which had been an issue with his previous placements, and that the likelihood of a permanent home with her would mean that he would not "languish" in foster care while continuing to wait for A.A. to involve herself in T.W.'s life and demonstrate she could care for him. This clearly indicates that the court believed T.W.'s probable adoption by his foster parent was in his best interest, the "paramount consideration" in a TPR case. *See Margaret H.*, 234 Wis. 2d 606, ¶33.

¶23 In short, the trial court's findings are supported by the record, and its discussion of the requisite statutory factors was thorough and complete. Therefore, by applying the correct standard of law to the facts of the case to determine the best interests of T.W., the court did not erroneously exercise its discretion in terminating the parental rights of A.A. *See id.*, ¶32. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

8