# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 21, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2022AP1935**
**2022AP1936**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2020TP236
2020TP238

**IN COURT OF APPEALS**
**DISTRICT I**

APPEAL NO. 2022AP1935

IN RE THE TERMINATION OF PARENTAL RIGHTS TO B. P. V., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

Y. P. V.,

       RESPONDENT-APPELLANT.

**APPEAL NO. 2022AP1936**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M. P. V., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

Y. P. V.,

      RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Reversed and cause remanded with directions.*

¶1 WHITE, J.[1] Ynez appeals the order terminating her parental rights to her daughters, Miranda and Beatriz, and the order denying postdisposition relief.[2] Ynez argues that her no contest plea to the grounds for the termination of parental rights (TPR) petition was not knowing, intelligent, and voluntary because the circuit court set forth the wrong standard of law for the dispositional phase

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reference and to protect the confidentiality of the proceedings, pseudonyms will be used to refer to the mother, daughters, and foster mother. Further, although there were separate TPR petitions for each daughter, the proceedings were consolidated and we refer to the cases and pleas in the singular for ease of reading.

during her plea colloquy. We conclude that Ynez's postdisposition motion set forth a prima facie case for plea withdrawal; accordingly, we reverse the order denying the postdisposition motion. We remand with directions for the circuit court to determine whether the State can prove her plea was nonetheless entered knowingly, intelligently, and voluntarily.

¶2     Additionally, Ynez argues that the circuit court's erroneous exercise of discretion in the dispositional phase require reversal and remand for a new dispositional hearing. Ynez contends that the court considered the factor of the harm from severance under the wrong standard of law, assessing the harm from separating the girls from their foster mother and not the harm from severance of the legal relationship with Ynez. Further, Ynez asserts that the circuit court incorrectly stated the time period for which the children were out her care, with the court describing it as seventy-five months instead of thirty-eight and one-half months. We agree that these errors require a new dispositional hearing. Therefore, we reverse and remand with directions for the circuit court to hold a new dispositional hearing.

## BACKGROUND

¶3     In October 2020, the State filed petitions to terminate Ynez's parental rights to her daughters, Miranda, born in 2010, and Beatriz, born in 2011.[3] The children were found to be children in need of protection or services (CHIPS) in May 2019, with a dispositional order entered in November 2019. They were

---

[3] The State also petitioned to terminate the parental rights of Beatriz's unknown but alleged father and Miranda's unknown father. Those terminations were ultimately granted and are not on appeal here. This decision focuses on the facts and the proceedings as they relate to Ynez.

detained by the Division of Milwaukee Child Protective Services (DMCPS) throughout the pendency of the dispositional order in an out-of-home care placement. In the TPR petition, the State alleged three grounds: continuing CHIPS, failure to assume parental responsibility, and commission of a serious felony against one of the person's children, pursuant to WIS. STAT. § 48.415(2), (6), and (9m).

¶4 Ynez's contact with DMCPS began with a report of bruising on Beatriz's upper arm in December 2018, which was followed by an incident in which Ynez allegedly burned Miranda's forehead with a heated piece of silverware in March 2019. Ynez was charged and convicted of felony child abuse for recklessly causing great harm to Miranda. After serving her required prison time in a Wisconsin state prison, Ynez was deported to Mexico, where she remained throughout this case.

¶5 In January 2021, the State filed a motion for partial summary judgment on the felony child abuse ground for the TPR. However, the State agreed to withhold the summary judgment request in light of Ynez's decision to plead no contest to two of the grounds: continuing CHIPS and failure to assume parental responsibility. Prior to accepting the plea, the court conducted a colloquy with Ynez.[4] We recite relevant excerpts:

> [THE COURT:] Do you understand that by pleading no contest, you are giving up the right to have the petitioner prove there is a reason to involuntarily terminate your parental rights?

---

[4] The court proceedings on the TPR petitions took place over Zoom video conferencing due to the Covid-19 pandemic. Ynez, whose primary language is Spanish, was assisted by sworn interpreters throughout the proceedings.

4

[YNEZ:]  Yes, yes, no contest.

….

[THE COURT:]  You are giving up your right to make the State prove the facts in the petition are substantially true?

[YNEZ:]  Yes.

[THE COURT:]  And that the facts are clear, satisfactory and convincing?

[YNEZ:]  Yes.

¶6      Within that colloquy, the circuit court also addressed the second phase as follows:

> You are, in fact, keeping your right to fight against the termination only as to the dispositional or best interest phase of the proceedings.
>
> ….
>
> You would have the right to force the petitioner or the State to prove to a reasonable certainty that adoption serves the best interest of your children and if they are not able to do so, that the petition for termination of parental rights should be dismissed and a different alternative would be pursued instead of the termination of your parental rights.

¶7      After a thorough colloquy on February 12, 2021, the circuit court accepted Ynez's no contest plea, contingent on the State proving the grounds, which then occurred after delays for reasons not relevant to this appeal, on January 28, 2022.

¶8      During the dispositional hearing, held on May 31, 2022, and June 1, 2022, the circuit court heard testimony from people connected to the case including the case manager, the children's foster mother, Ynez, and several members of Ynez's family in Mexico.  The case manager testified the children had been with their current foster placement, Trisha, since approximately December

2019. The children had been in three or four short-term placements before Trisha after they were detained by DMCPS in March 2019. Miranda was nine years old and Beatriz was eight years old at the time they were detained; they were both eleven years old at the time of the dispositional hearing, with Miranda turning twelve in the following month. The case manager testified that the foster mother is committed to adopting Beatriz and Miranda. Beatriz is particularly bonded to Trisha, calling her "mom" or "mama" and they have a close relationship. Miranda is also bonded to the foster placement, particularly Trisha's daughter and mother.

¶9      The case manager testified that Trisha displayed a willingness to facilitate the continuation of the relationship between the girls and Ynez. The foster mother has made an effort to keep Ynez informed about what is going on with the girls and encouraged virtual visitation, although there are language barriers because Ynez speaks Spanish and is not fluent in English and Trisha speaks English. Miranda and Beatriz speak both English and Spanish, although their Spanish skills are not fluent.

¶10     The case manager believed that Miranda would be harmed by the legal severance of the relationship, but it was not clear if Beatriz would be harmed. Further, the case manager believed it would be harmful to Miranda and Beatriz to be removed from their foster mother's care. Miranda told the case manager and her supervisor that she would be comfortable staying with her foster mother. She would like to visit Mexico, but not live there. She expressed that she would like to be adopted. Beatriz expressed that she was comfortable with her foster mother, but the case manager did not specifically ask her about adoption. The case manager testified that in-person visits had not happened since the children were removed from their mother's care.

6

¶11     The foster mother testified that the girls call her Miss Trisha; although in the beginning Beatriz called her mom.  The girls were close with her two biological daughters as well has her mother and father.  She testified that she was committed to maintaining a relationship between Ynez and the girls.

¶12     Ynez testified that she had a strong loving, mother-daughter relationship with both of her daughters prior to their removal from her care, when the girls were eight and nine.  She generally had weekly virtual visitation with the children and she sent letters to them regularly.  Ynez stated that she expects to continue to have contact and communication with the girls even if her parental rights are terminated.

¶13     After closing arguments, the circuit court addressed its considerations in deciding the disposition of the TPR petition.  The court began with an assessment that "[t]he children have been in out of home care since March 20th or March 18th of 2019 and that's about [seventy-five] months according to my calculations or three years and three months.  That's a significant amount of time."  Turning to the statutory factors, the court concluded that there was "a strong likelihood of adoption" and that the foster mother was "committed to adopting the girls if they are available for adoption."  For the second factor, the court concluded that there was "nothing about the age or health of the children that would be a barrier to them being adopted."  Miranda was nine and Beatriz were eight years old at the time of adoption; at the time of the hearing, Miranda was about to turn twelve and Beatriz was eleven years old.

> The next factor is whether the child has a substantial relationship with her parents…. Both girls recognize their mother....  They also recognize that [Trisha] has been available for them and caring for them since they were placed with her and [the foster mother] has been interested in continuing the children's contact with the mother

7

including supervising visits. I find that [Beatriz] is bonded to the foster parent and calls her mom. [Ynez] talks about the link and she mentioned that it has not been broken. I agree that the link between mother and children or child has not been broken but it has been weakened over time, not only because of the out of home placement but it has weakened because of [Ynez's] behavior when she had custody of her children and when they were placed with her.

As to [Miranda], … [she] recognizes her mother as her mom and [Trisha] has been very appropriate and telling the girls I am not your mom. I am Miss [Trisha]. She has been consistent in trying to make sure that the children have continued contact with their mother, including supervising visits. [Miranda] wants to be adopted as was stated today by the ongoing case manager two weeks ago for the first time. [Ynez] spoke about the link with her daughter [Miranda] and she mentioned that it's not been broken as with [Beatriz]. I find that the link has been substantially weakened because of the time that the children have been away from their mother and have frankly been relying on another family to become very familiar with and become bonded to. Now, I am not comparing [Trisha] to [Ynez]. What I am saying is that the reality is [Ynez] has not been available to care for the children and has made decisions that took her away from the girls and that has allowed them to be or forced them to be in out of home placement for over three year.

….

The State argued that it would harmful to remove the children from [the foster mother] given the length of time that the children have been with her and the relationship they have and the children have built with [their foster mother] and her family. I think it would be difficult for them to have to make that change or make another change in their lives. So even though I find that it is going to be difficult for both [Beatriz] and [Miranda] to sever the legal relationship that they have with their mother, there is a very real opportunity for [Ynez] to continue her relationship with her daughters because that's something that [the foster mother] will support and is advocating for but that's going to be up to [Ynez] should the children be adopted by [the foster mother] whether she wants to have that relationship and it sounds like that [the foster mother] is open to co-parenting[.]

¶14     The court continued its consideration of the factors with the wishes of the children. The court stated that Beatriz "may not understand adoption," but she wants to stay with her foster mother. Miranda "would like to be adopted by [Trisha]." The court concluded that both girls wanted to visit Mexico, but neither wanted to live there. Instead, they felt at home in Milwaukee.

¶15     The court turned to the fifth factor, stating that "[t]he duration of separation again, it's been since March of 2019 and if my math is correct, that is about [seventy-five] months." Finally, the court addressed the sixth statutory factor: "whether the children will be able to enter into a more permanent and more stable and permanent family relationship as a result of the termination taking into account the current conditions of the placement, the likelihood of future placements and the result of the prior placements." The court stated:

> Both girls have had four prior foster care placements. They don't need to have to be moved anymore. They are not going to return home and they should stay with [the foster mother] and [the foster mother] is committed to making her home a family home for them and their permanent home.… The mother has not been able to or not chosen and not demonstrated that she can safely care for the children given her past abuse and understanding how her behavior has impacted the children's behaviors…. I find that both [Miranda] and [Beatriz] would be able to have a more stable and permanent family relationship as a result of termination taking into account the current conditions of the placement, their prior placements and considering this evidence in light of the best interest of the child standard[.]

¶16     Finally, the circuit court concluded that "as a matter of law that the termination of [Ynez's] parental rights as to [Miranda] and [Beatriz] have been proven by clear and convincing and satisfactory evidence." The court found "as to both children that it is in the best interest of [Miranda] and [Beatriz] that their parental rights are terminated and I will transfer custody and legal placement of

9

the children to DMCPS for purposes of adoption." The court signed the termination order on June 1, 2022.

¶17 In December 2022, Ynez moved for postdisposition relief, arguing that her plea had not been knowingly, intelligently, and voluntarily made. The circuit court held a hearing on the motion on January 10, 2023; however, no evidence or witness testimony was presented. The court denied the motion, concluding that Ynez failed to make a prima facie case for plea withdrawal and denied the motion to vacate the no contest plea. The court further explained:

> I'm satisfied that the [c]ourt did not violate any of its mandatory duties. As pointed out by the State, the [c]ourt mentioned the issue of best interest and the [c]ourt only informed the mother that in order to determine best interest that it would require the State to do so by clear and convincing evidence, I'm sorry, a reasonable certainty that adoption would serve the best interest of her children. The [c]ourt in its findings at the dispositional stage found that the State proved that adoption was in the child's best interest by clear and convincing evidence. Also I'm satisfied based on the record that [Ynez's] decision was voluntarily made and well-informed.

¶18 Ynez now appeals both the order terminating her parental rights and the order denying her motion for postdisposition plea withdrawal.

## DISCUSSION

¶19 Ynez argues first that the circuit court informed her of the wrong statutory standard for the dispositional hearing during the plea colloquy on the grounds for the TPR. She asserts that she had made a prima facie case for plea withdrawal; therefore, she is entitled to an evidentiary hearing to determine whether her plea was knowingly, intelligently, and voluntarily made. Second, Ynez contends that the circuit court erroneously exercised its discretion in its consideration of the third factor in WIS. STAT. § 48.426(3), by considering the

10

harm to the children in severing the relationship with the foster family, not the harm in severing the legal relationship with Ynez. Further, she argues that the court overstated the duration of separation by about double the actual time—assessing seventy-five months instead of thirty-eight and one-half months.

## I. Plea withdrawal

¶20 A plea in a termination of parental rights case must be entered knowingly, voluntarily, and intelligently. *Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶24, 293 Wis. 2d 530, 716 N.W.2d 845. "Wisconsin law requires the circuit court to undertake a personal colloquy with the defendant in accordance with WIS. STAT. § 48.422(7)." *Jodie W.*, 293 Wis. 2d 530, ¶25. Within that colloquy, the circuit court must "at the very least … inform the parent that at the second step of the process, the court will hear evidence related to the disposition and then will either terminate the parent's rights or dismiss the petition if the evidence does not warrant termination." *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122. For that explanation to be "meaningful to the parent, the parent must be informed of the statutory standard the court will apply at the second stage." *Id.* The statutory standard for the dispositional phase is the best interests of the child, which "shall be the prevailing factor" in determining the disposition of a TPR petition. *See* WIS. STAT. § 48.426(2).

¶21 When a parent alleges that a plea was not knowingly, intelligently and voluntarily entered, we use the analysis set forth in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). *See Therese S.*, 314 Wis. 2d 493, ¶6. Under *Bangert*, a post-disposition motion "must make a prima facie showing that the circuit court violated its mandatory duties and must allege the parent did not know

or understand the information that should have been provided at the hearing." ***Therese S.***, 314 Wis. 2d 493, ¶6; ***State v. Brown***, 2006 WI 100, ¶39, 293 Wis. 2d 594, 716 N.W.2d 906. If a motion establishes a prima facie violation of a court mandated duty and makes the requisite allegations, "the court must hold a postconviction evidentiary hearing," during which the burden shifts to the State "to show by clear and convincing evidence that the ... plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea." ***Id.***, ¶40.

¶22 Whether a parent has presented a prima facie case by pointing to deficiencies in the plea colloquy and has sufficiently alleged that he or she did not know or understand information that should have been provided is a question of law that we review independently. ***Therese S.***, 314 Wis. 2d 493, ¶7.

¶23 In Ynez's postdisposition motion, she asserted that the circuit court misstated the statutory standard during the plea colloquy.[5] The record reflects that the court misstated the statutory standard, as shown here:

---

[5] We note that recent unpublished TPR cases have discussed the issue of misstatement of the standard of law or burden of proof in the dispositional phase. In ***State v. T.A.D.S.***, No 2018AP1873, unpublished slip op. (WI App June 18, 2019), the circuit court misstated the burden, assigning a burden to the State at disposition—however, that court also told the parent that best interests was the prevailing factor. This court concluded that the misstatement was irrelevant in the context of the entire record because the importance of the best interests factor was explained to the parent. In contrast, in ***State v. A.G.***, No. 2021AP1476, unpublished slip op. (WI App Feb. 15, 2022), the circuit court misstated the burden and this court remanded for an evidentiary hearing on the parent's prima facie case for plea withdrawal. There, we differentiated the facts and explained that "unlike in ***T.A.D.S.***, the trial court did not advise A.G. that the 'driving factor' or 'the most important factor' at the dispositional phase would be the child's best interest." ***Id.***, ¶20. We note that after additional proceedings, ***State v. A.G.***, No. 2022AP652, unpublished slip op. (WI App July 12, 2022) has been appealed to the Wisconsin Supreme Court. We consider this case to be akin to ***A.G.*** and ***Oneida Cnty. DSS v. Therese S.***, 2008 WI App 159, 314 Wis. 2d 493, 762 N.W.2d 122, not ***T.A.D.S.*** In ***Therese S.***, this court concluded that "the parent must be informed of the statutory standard the court will apply at the second stage" of TPR proceedings. ***Id.***, ¶16.

> You would have the right to force the petitioner or the State to prove to a reasonable certainty that adoption serves the best interest of your children and if they are not able to do so, that the petition for termination of parental rights should be dismissed and a different alternative would be pursued instead of the termination of your parental rights.

The statutory standard does not hold the State to a burden of proof nor does it have a standard of reasonable certainty. To have informed consent to enter into the no contest plea, a parent has a right to know the standard of law in the dispositional phase. *See **Therese S.***, 314 Wis. 2d 493, ¶16. We conclude that Ynez's allegations satisfied the first prong of a ***Bangert*** motion—a prima facie showing of a violation of statutory duties shown in passages in the plea hearing transcript. *See **Brown***, 293 Wis. 2d 594, ¶39.

¶24 Further, we conclude that Ynez's postdisposition motion satisfied the second prong of a ***Bangert*** motion—that she "did not know or understand the information that should have been provided at the plea hearing." *See **Brown***, 293 Wis. 2d 594, ¶39. Ynez asserted in her postdisposition motion that she was unaware that the circuit court, pursuant to statute, would consider "what was in the best interests of [Miranda] and [Beatriz] at disposition when determining whether or not to terminate her parental rights, as opposed to holding the State [to] a higher burden of proving, to a reasonable certainty, adoption served [Miranda and Beatriz's] best interest." Ynez asserted that she was "unaware of the proper standard because the circuit court misadvised her of that standard at the no contest plea hearing." We conclude that Ynez's allegation is sufficient to raise a question of fact. *See **State v. Hampton***, 2004 WI 107, ¶57, 274 Wis. 2d 379, 683 N.W.2d 14 ("The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of *fact* and perhaps law that requires resolution.").

13

¶25 We conclude that Ynez has made a prima facie showing that her plea was not knowing, intelligent, and voluntary, and she is entitled to an evidentiary hearing on her claim. Therefore, we reverse the order denying her postdisposition motion and remand for an evidentiary hearing. We note, however, that we are not determining whether the circuit court should ultimately grant or deny Ynez's motion to withdraw her plea. In this process, the State will have an opportunity in the evidentiary hearing to present evidence relating to Ynez's knowledge and understanding of the statutory standard that applies at disposition. The entire record may be considered in this hearing. *See **Brown***, 293 Wis. 2d 594, ¶40.

## II. *Best interests of the child factors*

¶26 Ynez's second argument challenges the court's decision in the dispositional phase of TPR proceedings. The decision to terminate parental rights is within the discretion of the circuit court. *See **Gerald O. v. Susan R.,*** 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. ***Dane County DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶27 In the dispositional phase, the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child. ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768. "During this step, the best interests of the child are paramount." ***Id.***; *see* WIS. STAT. § 48.426(2). When determining whether a TPR

is in a child's best interests, the circuit court "shall consider," but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). We defer to the circuit court's determination of the proper weight of each factor when the court properly examines each factor on the record. *State v. Margaret H.*, 2000 WI 42, ¶29, 234 Wis. 2d 606, 610 N.W.2d 475.

¶28 Ynez argues that the circuit court erroneously exercised its discretion in its consideration of the third factor, regarding the "substantial relationship" and "harm to the child." She contends that the circuit court considered the harm in severing the relationship between the children and their foster mother, not the relationship between the children and Ynez. She argues that the circuit court considerations were made with the wrong standard of law in mind.

¶29 Although the circuit court expressly stated it was "not comparing [Trisha] to [Ynez]," the record reflects that the children's substantial relationship to Ynez was contrasted to the foster mother throughout the court's considerations.

15

The court noted that the girls recognized their mother; however it then noted that the girls recognized that their foster mother had "been available for them and caring for them since they were placed with her[.]" The court discussed that the girls were bonded with their foster mother and her family. It also discussed that the bond between Ynez and her daughters was weakened, because "the reality is [Ynez] has not been available to care for the children and has made decisions that took her away from the girls and that has allowed them to be or forced them to be in out of home placement for over three years."

¶30 The circuit court's considerations of the girls' relationship with their mother was shown in stark contrast with the foster mother. When considering the best interests of the child, the circuit court may consider additional facts and factors outside of the six required factors. *See Sheboygan Cnty. v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402. Therefore, it is not improper to consider any bonding with the foster mother; however, the statutes require the court to consider the substantial relationship with biological parents and family, including "the child's emotional and psychological connections to the child's birth family." *Margaret H.*, 234 Wis. 2d 606, ¶19.

¶31 However, the circuit court considered the harms the children would suffer if they were separated from their foster mother, stating "it would be difficult for them to have to make that change or make another change in their lives." The court's focus here was not on the proper standard of law—the risk of harm from severing the children's legal relationship with their mother. *See* WIS. STAT. § 48.426(3)(c). The court concluded that it would be difficult for the girls to sever the legal relationship with Ynez; nevertheless, it focused on a possible continuation of a "co-parenting" relationship with the foster mother. It is true that the court may give "due weight to an adoptive parent's stated intent to continue

visitation with family members." *Margaret H.*, 234 Wis. 2d 606, ¶29. However, such a promise is "legally unenforceable." *Id.*, ¶30. During the dispositional hearing, "[t]he facts of record should influence the result" of the inquiry into the best interests of the child. *Julie A.B.*, 255 Wis. 2d 170, ¶42. Here, the facts of record show that the foster mother expressed a willingness to continue a relationship. However, the facts of record also show a considerable geographic distance including an international border, a language barrier, and immigration concerns that prevent Ynez from seeking visitation in Wisconsin. We do not doubt the foster mother's sincerity or intent; however, the court's findings are not based on the facts of record.

¶32 The GAL asserts that the circuit court's comments on the children's bond to their foster mother should be considered in the context of multiple factors, specifically the sixth factor. Similarly, the State argues that the court need not discuss discrete facts to consider each factor and that the children's bond to the foster mother could be considered in multiple factors. We again appreciate that the children are bonded to and cared for by their foster mother. As our supreme court stated, "[t]he decision whether to terminate a parent's rights to a child can be one of the most wrenching and agonizing in the law." *Julie A.B.*, 255 Wis. 2d 170, ¶29. The legislature crafted the statutory "factors that give contour" to the best interests of the child standard and "serve to guide courts in gauging whether termination is the appropriate disposition." *Margaret H.*, 234 Wis. 2d 606, ¶34. The appellate court will not attempt to weigh those considerations; however, "the record should reflect adequate consideration of and weight to each factor" by the circuit court. *Id.*, ¶35. We conclude that the court's consideration of the third factor did not reflect the proper standard of law and did not demonstrate rational

17

decision making based upon that the facts of record. *See* ***Julie A.B.***, 255 Wis. 2d 170, ¶43.

¶33   Additionally, Ynez argues that the circuit court misstated the length of separation between Ynez and her daughters, stating twice that it calculated seventy-five months of separation, calling it "a significant amount of time."  The actual duration of separation was approximately thirty-eight and one-half months. The circuit court's discretionary decision must be based on facts of record.  ***Id.***, ¶42.  The court repeatedly correctly stated the number of years of separation as three.  While the court's misstatement on this issue alone would not support reversing the dispositional order, in the context of the facts and circumstances in the record to support the court's determination, it undermines the reasonableness of the court's decision making.

## CONCLUSION

¶34   For the reasons stated above, this court reverses the order denying postdisposition relief.  Ynez made a prima facie showing for plea withdrawal and is entitled to an evidentiary hearing.  Therefore, we remand with directions to hold an evidentiary hearing to determine whether Ynez's no contest plea to the grounds was entered knowingly, intelligently, and voluntarily.

¶35   We conclude that the circuit court failed to consider the proper standard of law and did not demonstrate rational decision making in the dispositional phase.  We reverse the order terminating Ynez's parental rights and we remand for a new dispositional hearing, regardless of the outcome of the evidentiary hearing to determine if Ynez is allowed to withdraw her plea.  In that dispositional hearing, "the court must explore the child's best interests and then

18

determine whether maintaining the parent's rights serves the child's best interests." *See id.*, ¶38. There is no burden of proof for the State at disposition.

*By the Court.*—Orders reversed and remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.