COURT OF APPEALS
DECISION
DATED AND FILED

March 28, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP1946**
**2023AP1947**
STATE OF WISCONSIN

Cir. Ct. Nos. 2022TP17
2022TP18

IN COURT OF APPEALS
DISTRICT IV

---

**2023AP1946**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.K., A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

J. K.,

    RESPONDENT-APPELLANT.

---

**2023AP1947**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.K., A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

**J. K.,**

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] This is a consolidated appeal of circuit court orders that terminated J.K.'s parental rights to two of her biological children. On appeal, J.K. argues that the court erroneously granted partial summary judgment in favor of Dane County Department of Human Services (the "Department") at the grounds phase of the proceedings, and that the court erroneously exercised its discretion when it subsequently determined that termination was in the children's best interests. J.K. also argues that her trial counsel was ineffective for failing to support her summary judgment response with affidavits based on personal knowledge. I reject J.K.'s arguments and affirm.

## BACKGROUND

¶2 In July 2020, J.K. gave birth to twins. Approximately three months later, J.K. left the children in the care of another person and did not return. Shortly thereafter, the Department took custody of the children and placed them in a foster home. The Department initiated child in need of protection or services proceedings on behalf of the children, alleging that J.K. suffered from untreated mental health problems that caused her to be unable to care for the children. By

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

dispositional order issued in March 2021, the circuit court maintained the children's foster placement and set conditions that J.K. was required to meet before the children could be returned to her home, including that she attend visits with the children as scheduled by a social worker assigned to J.K. by the Department and guardian ad litem.

¶3      J.K. was scheduled for one or two visits with the children per week. She did not consistently attend these visits. In July 2021, the social worker sent J.K. a letter informing her that her visits with the children had been suspended because she had missed the last three, and asking J.K. to reach out to "schedule a time to meet and to discuss" the possibility of future scheduled visits. Visits did not resume until approximately five months later, in November 2021. J.K. later testified that mental health issues prevented her from seeing the children during that time.

¶4      In April 2022, the Department filed petitions to terminate J.K.'s parental rights to both children.[2]

¶5      Cases involving petitions for involuntary termination of parental rights ("TPR" cases) follow a "two-part statutory procedure." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase," the petitioner must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." *Id.*; WIS. STAT. § 48.31(1). If so, the court then proceeds to the second, or "dispositional" phase, in which it

---

[2] The Department also sought to terminate the parental rights of the children's father, whose identity was unknown to the circuit court, and the court ultimately terminated those rights. The rights of the unknown father are not at issue in this appeal.

decides whether it is in the best interests of the child that the parent's rights be terminated. ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

¶6      The Department moved for partial summary judgment, arguing that there was no dispute that grounds for termination existed based on abandonment as defined in WIS. STAT. § 48.415(1)(a)2.[3]   To prove abandonment under § 48.415(1)(a)2., the Department was required to show, among other things, that J.K. "failed to visit or communicate with the child[ren] for a period of 3 months or longer."     J.K. had an affirmative defense to the Department's proposed abandonment ground if she could show that she had "good cause" for failing to visit or communicate with the children during the period of alleged abandonment. *See* § 48.415(1)(c); ***State v. James P.***, 2005 WI 80, ¶46, 281 Wis. 2d 685, 698 N.W.2d 95.

¶7      The Department argued that there was no dispute that J.K. had failed to visit or communicate with the children for more than three months, specifically, between June 17, 2021, and November 5, 2021.  In her response opposing the summary judgment motion, J.K. claimed a good-cause defense.[4]  J.K. argued that her mental health issues constituted good cause for failing to visit the children. She asserted that, during the alleged abandonment period, she experienced severe

---

[3] The Department also moved for partial summary judgment on a different alleged ground for termination, continuing need of protection or services under WIS. STAT. § 48.415(2)(a).  The circuit court denied summary judgment on that ground, and the Department does not argue that the court erred by doing so.  Accordingly, I discuss this ground for termination no further.

[4] J.K. also argued in the circuit court that the Department could not show an abandonment period of three months or longer because the time during which the Department suspended her visits should not count toward the abandonment period.  On appeal, however, J.K. does not renew this argument.  I deem it abandoned and discuss it no further. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

depression requiring hospitalization on multiple occasions and that she "struggl[ed] to deal with even basic tasks like eating and drinking." J.K. also argued that she had good cause for failing to visit the children due to the social worker's decision to suspend scheduled visits. J.K. argued that she had good cause not to communicate with the children given that the twins had their first birthday during the alleged abandonment period; at that age, she contended, "most methods of communication, other than face-to-face, would have been ineffective."

¶8 In support of J.K.'s brief filed in opposition to summary judgment, J.K.'s trial counsel and trial counsel's paralegal submitted affidavits referring to portions of documents, such as case notes created by the social worker and other Department employees, that J.K. purportedly received in discovery in this TPR proceeding. However, the documents referenced in these affidavits are not attached to the affidavits. J.K. did not herself submit an affidavit.

¶9 By written order, the circuit court granted the Department's motion for partial summary judgment on the abandonment ground, determining that there was no genuine dispute that this ground was established and that J.K. lacked good cause for failing to visit or communicate with the children during the period cited by the Department. The court stated that the affidavits submitted by J.K.'s trial counsel in opposition to summary judgment were deficient because they were not based on personal knowledge. *See* WIS. STAT. § 802.08(3) (summary judgment affidavits "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence"). As to J.K.'s good-cause argument based on her mental health, the court acknowledged that the summary judgment materials contained deposition testimony by J.K. (submitted by the Department) in which she asserted that her mental health issues caused her to not visit or communicate with the children during the alleged abandonment period.

5

However, the court resolved the issue, in part, by explaining that, without a more detailed account of how J.K.'s mental health might have affected her "ability to visit or communicate with the children," the court was "left to speculate" as to how these problems constituted good cause. For a similar reason, the court rejected J.K.'s good-cause argument related to the Department's suspension of her visits. The court concluded that there was no evidence in the summary judgment materials that J.K. "did not know what she had to do to resume visits" after the social worker suspended scheduled visits due to J.K.'s failures to attend them.

¶10     Regarding J.K.'s assertion of good cause for failing to communicate with the children based on their young ages, the circuit court determined that there was no genuine dispute because the fact that they were so young was "not sufficient, standing alone, to raise a good-cause defense." The court stated that phone or video communication might, for example, help even an infant or toddler to "maintain familiarity with the parent's voice and appearance." The court noted that J.K. had failed to support her assertion with evidence such as an affidavit from J.K. pertaining to her experiences communicating with the children or an affidavit from an expert opining that video or phone communication would have been pointless at that age.

¶11     After granting partial summary judgment to the Department at the grounds phase, the circuit court held a dispositional hearing, at which it determined that termination of J.K.'s parental rights was in the children's best interests. Accordingly, the court terminated J.K.'s parental rights to both children.

¶12     J.K. filed a postdisposition motion asking the circuit court to vacate the orders terminating her parental rights. Her arguments included the following. Her trial counsel's performance was deficient because counsel failed to include in

the summary judgment submissions an affidavit by J.K. averring to matters within her personal knowledge, and if trial counsel had prepared such an affidavit for her to review and execute, it would have "demonstrate[d] the existence of a genuine issue of material" fact. J.K. did not submit any such affidavit in support of her postdisposition motion.

¶13 The circuit court held an evidentiary hearing on J.K.'s postdisposition motion. J.K. did not testify at the hearing. J.K.'s trial counsel testified that the summary judgment submission that he prepared was in the "wrong form," and that, in hindsight, counsel should have prepared an affidavit for J.K. to execute, and should have attached copies of the Department's case notes and other documents referred to in the affidavits submitted on summary judgment. However, trial counsel also testified that he would have had difficulty preparing an affidavit actually reflecting J.K.'s viewpoint regarding her mental health because she had a limited ability to explain her mental health issues to counsel. Counsel also testified that he could not have prepared an affidavit for J.K. averring that she lacked relevant information and was confused about how to resume scheduled visits with the children after they were suspended, because counsel was aware that she in fact had the relevant information and that she had been aware that she could resume scheduled visits if she raised the issue with the social worker.

¶14 The circuit court denied J.K.'s postdisposition motion. J.K. appeals.

## DISCUSSION

¶15 J.K. argues that the circuit court erred by denying her motion for postdisposition relief on ineffective assistance of counsel grounds, by granting the Department's motion for partial summary judgment, and by determining that termination was in the children's best interests.

### I.    Ineffective Assistance of Counsel

¶16    A parent in a TPR proceeding has the right to effective assistance of counsel. *See* ***Oneida Cnty. DSS v. Nicole W.***, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. A parent's ineffective assistance of counsel claim is analyzed under the test articulated in ***Strickland v. Washington***, 466 U.S. 668 (1984). *See* ***Nicole W.***, 299 Wis. 2d 637, ¶33. Under that test, to establish ineffective assistance, a defendant must prove both "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." ***Strickland v. Washington***, 466 U.S. at 687. "If the defendant fails to adequately show one prong of the ***Strickland*** test, we need not address the second." ***State v. Elm***, 201 Wis. 2d 452, 462, 549 N.W.2d 471 (Ct. App. 1996).

¶17    Appellate review of a circuit court decision resolving an ineffective assistance of counsel claim relies on a mixed standard. ***State v. Savage***, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838. The circuit court's factual findings are upheld unless they are clearly erroneous, and the issue of whether counsel's conduct constituted ineffective assistance is reviewed de novo. *See **id.***

¶18    J.K. alleges two deficiencies in trial counsel's performance, so far as I can discern from her briefing. First, J.K. argues that trial counsel should have drafted and had her execute an affidavit averring to certain facts that would have raised a genuine dispute as to her good-cause defense. In her appellant's brief, J.K. asserts that this affidavit would have included facts pertaining to her mental health issues and her alleged attempts to resume visits with the children. However, during the postdisposition proceedings in the circuit court, J.K. submitted no such affidavit, nor did J.K. provide any testimony at the evidentiary

hearing. J.K. cannot rely solely on postdisposition counsel's representations in her appellant's brief about what evidence she might have presented—this is "merely argument," not evidence. *State v. Jeninga*, 2019 WI App 14, ¶22, 386 Wis. 2d 336, 925 N.W.2d 574; *see also State v. Jeannie M.P.*, 2005 WI App 183, ¶26, 286 Wis. 2d 721, 703 N.W.2d 694 (the ineffective assistance of counsel inquiry considers "the totality of the *evidence* before the trier of fact" (emphasis added)). Without evidence of what counsel could have and should have included in an affidavit, J.K. cannot meet her burden to show that trial counsel was deficient in failing to draft such an affidavit, or that she was prejudiced as a result. Moreover, as noted above, J.K.'s trial counsel testified at the postdisposition hearing that he doubted that he could have in good faith drafted an affidavit for J.K. containing facts necessary to support a good-cause defense.

¶19 Second, J.K. argues that trial counsel was deficient for failing to submit case notes that counsel obtained from the Department via discovery. J.K. submitted these notes in support of her postdisposition motion. Assuming without deciding that it was deficient performance for counsel to fail to submit these notes as part of the summary judgment process, I reject this argument because J.K. fails to show prejudice. According to J.K., these notes would have supported her good-cause defense because they show, among other things, that the Department failed to explain to J.K. what she needed to do in order to resume visits after the social worker suspended them. However, J.K. does not support this argument with a citation to any specific portion of the approximately 75 pages of case notes that she submitted after disposition. Arguments on appeal must be supported by citation to the "parts of the record relied on." WIS. STAT. RULE 809.19(1)(e); *see also Siva Truck Leasing, Inc. v. Kurman Distributors, Div. of S. Abraham & Sons, Inc.*, 166 Wis. 2d 58, 70 n.32, 479 N.W.2d 542 (Ct. App. 1991) ("The

9

reviewing court need not sift the record for facts which support counsel's contention."). Moreover, as noted above, J.K.'s trial counsel testified to his understanding that the Department had, in fact, made it clear to J.K. what she needed to do in order to resume scheduled visits. Assuming without deciding that the circuit court could properly rest its decision in part on aspects of the case notes (for example, putting aside such potential obstacles as hearsay objections or challenges in interpreting the meaning of notes standing alone), J.K. fails to provide us with a starting point by explaining how anything reflected in the case notes might contradict trial counsel's testimony.

¶20 Accordingly, J.K. has not met her burden to prove ineffective assistance of counsel.

## II.    Summary Judgment

¶21 The statutory summary judgment procedure generally applies to TPR proceedings, and partial summary judgment may be granted to resolve the grounds phase. *See Steven V.*, 271 Wis. 2d 1, ¶¶32, 44. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶22 A circuit court's grant of summary judgment is reviewed de novo, applying the same methodology as the circuit court. *State v. Bobby G.*, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. In evaluating a motion for summary judgment, a court first "examine[s] the moving party's submissions to determine whether they establish a prima facie case for summary judgment." *Estate of Oaks v. Stouff*, 2020 WI App 29, ¶11, 392 Wis. 2d 352, 944 N.W.2d 611. If the moving

party makes such a showing, the court then examines the opposing party's submissions "to determine whether a genuine issue exists as to any material fact." *Id.*

¶23 As a preliminary matter, J.K. notes that partial summary judgment is generally disfavored in TPR cases when the asserted grounds is abandonment. *See Steven V.*, 271 Wis. 2d 1, ¶36 ("Summary judgment will ordinarily be inappropriate in TPR cases premised on [] fact-intensive grounds" such as abandonment). However, our supreme court has stated that, although fact-intensive grounds for termination will often be unsuitable for summary judgment, this does not mean that summary judgment on such grounds is categorically inappropriate. *See Bobby G.*, 301 Wis. 2d 531, ¶40. Whether summary judgment is appropriate "is determined case-by-case." *Steven V.*, 271 Wis. 2d 1, ¶38 n.4. I conclude that summary judgment is appropriate in this case for the following reasons, beginning with additional background regarding the applicable legal standards.

¶24 The ground of abandonment under WIS. STAT. § 48.415(1)(a)2. requires the Department to show that "the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by [WIS. STAT. §] 48.356(2) or [WIS. STAT. §] 938.356(2) and the parent has failed to visit or communicate with the child for a period of 3 months or longer." *See* § 48.415(1)(a)2. Here, "[a]bandonment is not established" if J.K. proves the affirmative defense of good cause, which requires her to "prove[] all of the following by a preponderance of the evidence": (1) that she had "good cause for having failed to visit" the children during the alleged abandonment period; (2) that she had "good cause for having failed to communicate with" the children during that period; and (3) if she proves good cause for failing to communicate

with the children during that period, that she either communicated about the children with their foster custodian or the Department, or had good cause for failing to do so. *See* § 48.415(1)(c).

¶25    J.K. does not dispute that the children were placed outside her home under the authority of a circuit court order containing the appropriate notices. J.K. also does not dispute that she failed to visit the children between June and November of 2021, a period of longer than three months. J.K. contends that there are genuine disputes of material fact on two issues: whether she failed to communicate with the children during that period and her good-cause defense.

¶26    As to the first issue, failure to communicate with the children, the Department introduced evidence in the form of an affidavit by the social worker that J.K. "did not call, write or otherwise contact either child between June 17, 2021 and November 5, 2021." J.K. contends that this issue is disputed because on August 8, 2021, she "messaged back and forth" with the children's foster parent.[5] In a cursory argument, J.K. suggests that these exchanges constitute communication with the children and this communication "interrupt[ed]" the alleged abandonment period.

¶27    I could reject this argument on forfeiture grounds because J.K. failed to preserve it by raising it in the circuit court. *See Tatera v. FMC Corp.*, 2010 WI

_____

[5] To support this argument, J.K. refers to the averment of her trial counsel submitted in the circuit court that, based on his review of discovery, the social worker "was told by the foster parent" in September 2021, "that the foster parent 'heard from [J.K.] on 8/6 and they messaged back and forth.'" This averment is plainly deficient because it is not based on personal knowledge of trial counsel, but instead is based on what counsel claimed to have surmised from his review of documents. *See* WIS. STAT. § 802.08(3). Setting aside the issue of whether J.K.'s argument has an evidentiary basis, it fails for the reasons discussed in the text.

90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited."). In any case, however, the argument is not persuasive. J.K. fails to explain why her alleged exchange of an unknown number of messages of unknown content with the children's foster parent should be considered to be equivalent to communication with the children. In fact, as noted above, the good-cause statute expressly distinguishes between the parent's communication with the child and the parent's communication with the child's custodian. *See* WIS. STAT. § 48.415(1)(c)2.-3. Thus, J.K. has not identified a genuine dispute of material fact as to J.K.'s failure to communicate with the children for a period of three months or longer.

¶28 Regarding J.K.'s good-cause defense, she bears the initial burden to identify evidence in the summary judgment materials sufficient to support it, as well as the overall burden of proof. *See **Transportation Ins. Co. v. Hunzinger Const. Co.**,* 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993) ("The ultimate burden ... of demonstrating that there is sufficient evidence … to go to trial at all (in the case of a motion for summary judgment) is on the party that has the burden of proof on the issue that is the object of the motion.").

¶29 I assume without deciding that J.K. has proof that meets the first of the three elements of the good-cause defense, namely, that she had "good cause for having failed to visit" the children during the alleged abandonment period. But it is fatal to her appeal that she fails to show—indeed, she fails even to argue on appeal—that there is no genuine issue of material fact regarding the other two elements: that she had "good cause for having failed to communicate with" the children during that period; and that she either communicated about the children with their foster custodian or the Department, or had good cause for failing to do so. *See* WIS. STAT. § 48.415(1)(c)2.-3.

¶30    Although J.K. argued in the circuit court that she had good cause for failing to communicate with the children because their young age made anything but face-to-face communication meaningless, J.K. does not renew this argument on appeal, and I deem it abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998). Similarly, she does not argue on appeal that there is a genuine, material factual dispute as to whether she either communicated "about the children" with the foster family or the Department, or whether she had good cause for failing to do so. *See* WIS. STAT. § 48.415(1)(c)3. As discussed above, J.K. suggests that there is an evidentiary basis to establish that she communicated with children's foster parent in August 2021; however, J.K. fails to identify anything in the summary judgment materials to show that this communication was "about the children" as required to satisfy § 48.415(1)(c)3.

¶31    Accordingly, J.K.'s submissions do not show that there is a genuine issue of material fact as to abandonment or J.K.'s good-cause defense to abandonment, and the circuit court did not err in granting partial summary judgment to the Department.

### III.    Erroneous Exercise of Discretion

¶32    At the dispositional phase of a TPR proceeding, the circuit court determines whether termination of the parent's parental rights is in the best interests of the child, guided by the best interest factors set forth in WIS. STAT. § 48.426. *Sheboygan Cnty. HHS v. Julie A.B.*, 2002 WI 95, ¶¶29, 37, 255 Wis. 2d 170, 648 N.W.2d 402. These factors are: (a) the "likelihood of the

child's adoption after termination";[6] (b) the "age and health of the child"; (c) whether the child has "substantial relationships with the parent or other family members," and whether severing those relationships would harm the child; (d) the "wishes of the child"; (e) the "duration of the separation of the parent from the child"; and (f) whether the child can "enter into a more stable and permanent family relationship as a result of the termination." *See* § 48.426(c). The court's decision is discretionary, and will be affirmed so long as the court "employs a rational thought process based on an examination of the facts and an application of the correct standard of law." *Julie A.B.*, 255 Wis. 2d 170, ¶43.

¶33 At the conclusion of the disposition hearing here, the circuit court addressed each of these factors and determined that termination was in the children's best interest. Based on the testimony of the children's foster mother, the court found that the children were likely to be adopted if J.K.'s parental rights were terminated. The court considered that the children were healthy and "developing appropriately" while residing with their foster family. The court further noted that J.K. had placed the children in a "dangerous situation" when, shortly after their birth, she left them "with a third party who did not have the ability to take care of the children." The court said that J.K. had a "loving relationship" with the children, but, due to a lack of consistency of visits, it was not the sort of "substantial relationship" that children typically have with parents. The court further observed that the children were "too young" to express a preference as to disposition, but noted that the children's guardian ad litem supported termination. The court considered that the children had been separated

---

[6] *See also* WIS. STAT. § 48.81(2) (a child may be adopted if "[t]he parental rights of both of the child's parents with respect to the child have been terminated").

from J.K. "almost their whole lives," with J.K. having at most two visits per week. In addition, the court determined that termination was likely to result in a more stable family relationship for the children. The court based this last conclusion in part on a determination that J.K. had not been able to manage her "longstanding mental health issues" consistently, and that this pattern of instability was likely to continue.

¶34    J.K. acknowledges that the circuit court "weighed each of the required factors," but contends that this weighing "produced an erroneous result." Specifically, J.K. argues that the court erred as to the third factor, which, as noted, requires the court to consider whether the child has "substantial relationships with the parent," and whether severing that relationship would harm the child.[7] WIS. STAT. § 48.426(c). J.K. directs us to her unsworn statements at the disposition hearing to the effect that she loves her children and that she believes she has had consistently positive visits with them. But the court took into account what it acknowledged to be positive aspects of J.K.'s relationship with her children, and the potential harm that it might cause the children "to not have that emotional relationship with their mother anymore." The court proceeded to engage in a rational process of carefully weighing that potential harm against the fact that, due to the inconsistency of J.K.'s visits, she never had a significant role in the children's day-to-day parenting. Ultimately, the court determined that this factor was neutral and did not clearly weigh in favor either of terminating or not

---

[7] J.K. also contends that the circuit court "accepted the guardian ad litem's position as that of the child[ren]" but she does not make an explicit argument that the court erred by taking into account the view of the guardian ad litem. To the extent that J.K. intends to make such an argument, I reject it as undeveloped and unsupported by citation to legal authority. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

terminating J.K.'s parental rights. J.K. has not shown that the circuit court failed to consider the relevant facts and apply them rationally in addressing the third statutory factor. Further, the court's conclusion that termination was in the children's best interests was based primarily on its determination that other factors weighed in favor of termination. The weighing of the factors is for the circuit court, not this court. *See State v. Margaret H.*, 2000 WI 42, ¶29, 234 Wis. 2d 606, 610 N.W.2d 475 (this court "cannot mandate the relative weight to be placed" on any best interest factor). Accordingly, J.K. has not shown that the circuit court erroneously exercised its discretion.

## CONCLUSION

¶35 For all of these reasons, I affirm the circuit court's orders terminating J.K.'s parental rights.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

17